**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph Charles BONANNO, Jr., Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Salvatore Vincent BONANNO, a/k/a Bill Bonanno, Defendant-Appellant.**

**Nos. 72–1779, 72–1780.**

United States Court of Appeals, Ninth Circuit.

Sept. 14, 1972.

Certiorari Denied Jan. 22, 1973. See 93 S.Ct. 964.

See also, 460 F.2d 272.

Alan F. Scribner (argued), Albert J. Krieger, New York City, for defendant-appellant.

Mervyn Hamburg (argued), Washington, D. C., James L. Browning, Jr., U. S. Atty., Philip R. Michael, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before HAMLIN and GOODWIN, Circuit Judges, and CRARY,* District Judge.

HAMLIN, Circuit Judge:

Appellants Salvatore and Joseph Bonanno were convicted of the offenses of collection of an extension of credit by extortionate means, in violation of 18 U.S.C. § 894; conspiracy, in violation of 18 U.S.C. § 371; and principal to a crime, in violation of 18 U.S.C. § 2. Their conviction arose out of procedures which they utilized in collecting a debt owed by one Robert Piper.

Piper was an airplane pilot who entered into a scheme with one Alfred Salciccia for smuggling marijuana by air into the United States from Mexico. Salciccia gave Piper $5,000 to be used in arranging transportation and purchase of the drug, while Salciccia expected to receive a share of either the profits or the marijuana. However, the marijuana was lost during the flight from Mexico.

When informed of the aborted smuggling effort, Salciccia stated that certain people had to be paid back "within the next week or so because they were getting a little edgy for the money." Salciccia then said that at least $2,500 had to be repaid immediately. Piper eventually obtained the $2,500 from his parents and paid it over to Salciccia's representative. He also made repeated assurances to Salciccia that the balance would be paid.

---

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

Several weeks passed and Salciccia, apparently not mollified by Piper's assurances, eventually called upon Joseph Bonanno, Jr., to provide assistance in collecting the debt. Bonanno, in turn, utilized the services of Pat Hartigan to aid him in the collection process.

Thereafter ensued a series of meetings involving Hartigan, Joseph Bonanno, Piper and, occasionally, one Al Smith, a friend of Piper's who often made payments on Piper's debt. Piper once failed to attend one of these meetings; because of this the debt balance was raised from $2,500 to $3,000.

Throughout these protracted series of meetings, Joseph Bonanno, Jr., often voiced threats concerning what would happen to Piper if he did not pay. On one occasion, Hartigan struck Piper. Ultimately, Piper, through the help of his parents, was able to pay the debt.

At trial below, Hartigan testified as a Government witness. He stated that Joseph Bonanno, Jr., had solicited him to assist in debt collections. Hartigan further testified that he was employed as a "muscleman," engaged in "fear motivation." He also told how similar tactics were employed in collecting debts owed by Vic Romalo and Willy Ellis.

Hartigan's testimony also revealed that Salvatore "Bill" Bonanno was actively concerned with the status of these debt collections, that he often participated in discussions concerning the Piper, Romalo, and Ellis debts, and that he advocated the use of force to expedite collections. He further testified that Bill Bonanno discussed the Piper debt with him almost daily. In discussing the Piper situation, Bill had told Hartigan that "in order for a debt to be collected, somebody has to get hurt." Hartigan also maintained that he split the collection "take" with both of the Bonanno brothers, and that a substantial portion of Piper's final installment had gone to underwrite certain personal expenses incurred by Salvatore Bonanno.

The Government also introduced other evidence and testimony that further confirmed Hartigan's testimony.

On appeal, three contentions are advanced. First, appellants argue that they were engaged only in isolated debt collections of a private and provincial nature, that these collections did not occur as part of a classical "loansharking" scheme, that they did not have an effect on interstate commerce, and, thus were not within the class of activities proscribed by Congress in Title II of the Consumer Credit Protection Plan, 18 U.S.C. § 891 *et seq.* [hereinafter, Act].

■ This contention is clearly untenable. The purely intrastate nature of these activities does not remove them from the Act's coverage. As stated in Perez v. United States, 402 U.S. 146 at 154, 91 S.Ct. 1357, 28 L.Ed.2d 686:

"Where the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class. Maryland v. Wirtz, 392 U.S. 183, 193, 88 S.Ct. 2017, 2022, 20 L.Ed.2d 1020, 1029.

"Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce. In an analogous situation, Mr. Justice Holmes, speaking for a unanimous Court, said: '[W]hen it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so.' Westfall v. United States, 274 U.S. 256, 259, 47 S.Ct. 629, 71 L.Ed. 1036, 1037." 402 U.S. at 154, 91 S.Ct. at 1361.

Clearly, appellants are members of a class which engages in extortionate credit transactions as proscribed by the Act.

■ Nor is appellants' contention that they were merely collecting a simple debt of any benefit to them. The

Act provides that whoever participates or conspires to use any extortionate means to collect any extension of credit has violated the law.[1] Thus, the Act is viewed as being a "comprehensive federal attack on loan-sharking." United States v. Perez, 426 F.2d 1073, 1075 (2d Cir. 1970), aff'd, 402 U.S. 146, 91 S.Ct. 1357, *supra.* Appellants' activities were clearly within the ambit of the Act's proscriptions and it would be inconsistent with the spirit of the Act to find otherwise.

Secondly, appellants contend that the trial court erred in admitting evidence relating to the Romalo and Ellis collections, inasmuch as they were not charged in the indictment. They contend that admission of evidence relating to these prior illegal acts denied them a fair trial.

We do not agree.

■■ One of the charges in the indictment alleged conspiracy. In conspiracy prosecutions, the Government has considerable leeway in offering evidence of other offenses. Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969), reh. denied, 395 U. S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969). Evidence of these prior collections would be admissible to show some material facts relating to the conspiracy charged. United States v. Jones, 425 F. 2d 1048, 1051 (9th Cir. 1970), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed. 2d 51 (1970). It would also be relevant to show that they were continuing along the same line in their collections. United States v. DeSapio, 435 F.2d 272, 280 (2d Cir. 1970), cert. denied, 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166 (1971).

In any event, even assuming *arguendo* that the evidence relating to the Romalo and Ellis collections should not have been admitted, it could not have been prejudicial, given the strength of the government's case. *Cf.* United States v. Masters, 450 F.2d 866, 868 (9th Cir. 1971), cert. denied, 405 U.S. 1044, 92 S.Ct. 1329, 31 L.Ed.2d 587 (1972).

■ Finally, appellant Salvatore Bonanno contends that the evidence was insufficient to justify his conviction. There was, however, testimony indicating that Salvatore participated in discussions concerning the Piper debt, that he urged the use of violence and force in collecting the debt, and that he had ultimately benefited personally from the proceeds of the Piper collection.

As we are required to view the evidence in a light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); United States v. Scott, 452 F.2d 660 (9th Cir. 1971), we must therefore reject this contention as untenable. The Government needed only to present facts from which the jury could draw the reasonable inference that appellant Salvatore Bonanno was guilty beyond a reasonable doubt. United States v. Magana, 453 F.2d 414, 415 (9th Cir. 1972); United States v. Brown, 436 F.2d 702, 704 (9th Cir. 1970). This it has done.

The judgment is affirmed.

---

1. 18 U.S.C. § 894 provides, in pertinent part:

   (a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

   (1) to collect or attempt to collect any extension of credit, . . .

   (2) . . . shall be fined . . . or imprisoned . . . or both.