**UNITED STATES of America,
Appellee,**

v.

**Paul VARIO, Appellant.**

**No. 1059, Docket 73–1592.**

United States Court of Appeals,
Second Circuit.

Argued July 18, 1973.

Decided Sept. 12, 1973.

Certiorari Denied Jan. 7, 1974.
See 94 S.Ct. 867.

Jerome Lewis, New York City (H. Elliot Wales, New York City, on the brief), for appellant.

Robert E. Lindsay, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and John P. Burke, Attys., Tax Div., Liam Coonan, Sp. Atty., Dept. of Justice, Washington, D. C., Robert Morse, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., of counsel), for appellee.

Before MOORE and OAKES, Circuit Judges, and GURFEIN,* District Judge.

MOORE, Circuit Judge:

This is an appeal from a judgment of conviction entered after a trial by jury, Jacob Mishler, *Chief Judge*, presiding. The jury found appellant Paul Vario guilty on all three counts of an indictment charging him with conspiracy [1] to obstruct the Treasury Department's collection of income taxes in violation of 18 U.S.C. § 371.[2] (Count I) and with wilfully and knowingly submitting income tax returns for 1965 and 1966, which he did not believe to be true, in violation of Section 7206(1) of the Internal Revenue Code of 1954 (Counts II and III).[3] Vario was sentenced to consecutive three-year terms on Counts II and III; a five-year sentence was imposed on Count I to be served concurrently with the sentences imposed on Counts II and III. Vario was also fined a total of $20,000.

On this appeal appellant raises four points which he urges require that this Court reverse his conviction. For the reasons discussed below, we affirm the conviction.

At trial the government attempted to prove that Vario had wilfully and know-

---

* Hon. Murray I. Gurfein, United States District Judge for the Southern District of New York, sitting by designation.

1. There were two co-conspirators named in the indictment, Henry Younger and Stephen DePasquale. DePasquale died before trial; Younger pleaded guilty to Count II and received a suspended sentence, a $1,000 fine, and two years probation.

2. Conspiracy to commit offense or to defraud the United States. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

\*   \*   \*   \*   \*

18 U.S.C. § 371.

3. Any person who—
(1) *Declaration Under Penalties of Perjury*— Wilfully makes and subscribes any return, statement or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; \* \* \* shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than three years, or both, \* \* \*.
§ 7206(1) Internal Revenue Code of 1954.

ingly submitted false income tax returns in 1965 and 1966 in that he had failed to disclose the fact that he was engaged in a gambling or "policy" operation which produced gross income for him. This was not a "net worth" case, and the government did not attempt to show that Vario had received specific sums of money, that he had made large bank deposits, or that he lived above his reported income. Rather, through the testimony of government undercover agents and of others who were involved in a policy business, the government sought to establish that Vario was active in such an operation and that it produced income for him which he had failed to report.[4]

The undercover agents and former policy writers testified to extensive contacts with Vario's co-conspirators in connection with a policy business. Their testimony also revealed that they had had some contacts with Vario in connection with their policy business. While the contacts between these witnesses and Vario were not as extensive as those between the witnesses and Vario's co-conspirators, the evidence as a whole was entirely sufficient to support the jury's verdict and is not here challenged.

■ Vario's first claim of error stems from an attempt by the government to establish an admission by Vario that he had been involved in a policy business during 1965 and 1966 by introducing evidence that Vario had pleaded guilty to a gambling charge for activities which occurred during 1965 and 1966. While the proper way to introduce evidence of a prior conviction is to produce the judgment of conviction signed by the sentencing judge or a transcript of the relevant proceedings before the court (*See* Rule 803(22), Proposed Rules of Evidence for United States Courts and Magistrates, 56 F.R. D. 183, 303, 318–319; United States ex rel. Lasky v. LaVallee, 472 F.2d 960, 964 (2d Cir. 1973)), the government offered

only a copy of the clerk's docket entries. The docket entries were received in evidence with the court stating that the government should also produce a "certified or exemplified copy of the judgment of conviction * * *." (Transcript at 402). No such copy of the judgment of conviction was produced by the government.

The docket entries indicated that in 1966 Vario had pleaded guilty in state court to three counts of contempt of court (for failing to testify before a grand jury) and one count of conspiracy to violate the New York bookmaking law. Vario argues that once the court indicated that it would admit the docket entries as an admission that he had been involved in gambling during 1965 and 1966, he had no choice but to waive his Fifth Amendment right to silence and to testify that he had entered a plea of guilty pursuant to an agreement between his attorney and the district attorney's office whereby he would serve only seven months in jail on all four matters. Vario also testified that it was one of the conditions of his agreement to plead guilty to all four charges against him. Vario said that while he was guilty of the contempt of court charges, he was innocent of the bookmaking charge and had pleaded guilty to it only because that was part of the agreement his attorney had arranged.

In addition to being forced to waive his Fifth Amendment privilege, Vario argues that in explaining his plea of guilty to the bookmaking charge, he had to inform the jury that he was guilty of contempt of court for refusing to testify before a grand jury. This admission, says Vario, did not add to his credibility in the eyes of the jury.

The government's position is that by actually taking the stand and admitting the accuracy of the docket entries, Vario waived any objection to the admission of that exhibit. Furthermore, the government asserts that Vario's attorney indi-

---

4. For 1965 and 1966, Vario reported income of $7,280, his salary as president of Fountainbleu Florists.

cated on two occasions that Vario would testify on his behalf and that on neither occasion was there a hint that this testimony was "forced" by the introduction of the docket entries regarding the state court guilty pleas. During a discussion of whether the government was going to produce a certified copy of the judgment of conviction, Vario's attorney interjected: "I think it is going to be moot because the defendant is going to take the stand * * *." (Transcript at 435). During a discussion of the jury charge concerning the right of a defendant not to testify, Vario's attorney stated: "If a man does not fight for himself, he is very rarely acquitted." (Transcript at 620).

■ While this Court certainly does not approve the government's attempt to establish a guilty plea by docket entries without any explanation as to why a certified copy of the judgment of conviction or of the transcript of the proceedings was not produced, we agree, that in this case by testifying in his own defense and admitting the accuracy of the docket entries, Vario waived his objection to them.

■ As his next assignment of error Vario claims that the district court improperly commented upon his attorney's closing argument. In that argument defense counsel had reverted to the "Golden Rule" standard for jury determination—a standard long since rejected by this Court. Specifically, counsel in effect asked the jurors whether if any of them, their friends, or members of their families ran afoul of the law, they would not wish the jury to apply the Golden Rule. Counsel actually told the jury that "the juror's creed is an exemplification of what we call the Golden Rule." (Transcript at 663). Since this is not an applicable standard, the trial judge quite properly advised the jury that "You must be impartial and objective. No one is to judge themselves, that is not the system of justice." (Transcript at 811). *See* United States v. Birnbaum, 373 F.2d 250, 258 (2d Cir.), cert.

denied, 389 U.S. 837, 88 S.Ct. 53, 19 L. Ed.2d 99 (1967).

Appellant next argues that the district court erred in refusing to strike the testimony of rebuttal witness Detective Robert Donohue. As part of the government's case-in-chief, Detective Frank Fortuna testified that in August, 1965, he had investigated a burglary at Vario's home. While there Fortuna stated that Vario had shown him a small metal box containing three stacks of money which Vario stated amounted to $15,000. During his testimony Vario denied that he had ever had $15,000 in his house, that he had ever kept money in a metal box, or that he had told Fortuna that there was $15,000 in the box. Vario also denied showing any other police officer a metal box containing currency at the time of that burglary. On rebuttal Robert Donohue was called to testify that he, too, had investigated the August, 1965, burglary of Vario's home and had seen a metal box containing three stacks of currency.

Vario himself then pointed out to his attorney that, despite the existence of an order excluding witnesses from the courtroom, Donohue had been in court on the previous day during Fortuna's testimony. Vario's attorney moved to strike Donohue's testimony, which motion was denied.

When called upon by the court for an explanation of this violation of the court's exclusion order, the government stated that Donohue had attended the trial previously only because his partner, Detective Fortuna, was expected to testify. The government further stated that at the time of Fortuna's testimony, it was not expected that Donohue would testify, and that Donohue's testimony was necessitated only by Vario's denial.

■■ Violation of an order excluding witnesses does not automatically bar a witness from testifying. Holder v. United States, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893). In this case, the trial court was convinced that there was no intentional violation of his order.

(Transcript at 609). The court ruled that the testimony should not be stricken only after specifically requesting of Vario's attorney a showing of the prejudice Vario had suffered as a result of this violation of the exclusion order. No such showing was made, nor could there have been such a showing.

The fact that Donohue had been in court to hear Fortuna's testimony was called to the jury's attention. This case is unlike United States v. Nazzaro, 472 F.2d 302 (2d Cir. 1973) in which this Court found error where the district court failed to exclude an agent whose "credibility was a crucial element in the government's case * * *." (472 F.2d at 313 n.12). While Donohue's testimony was helpful to the government in attacking Vario's credibility and in establishing that Vario had gross income which he was concealing, it cannot be said that either Donohue's testimony or his credibility was "crucial" to the government's case. The trial court did not err in refusing to strike Donohue's testimony.

Appellant's final assignment of error is that the district court erred in permitting the government to introduce evidence that tended to show that Vario was receiving police protection. This evidence consisted of the testimony of a Special Agent of the Internal Revenue Service who had conducted surveillance of certain activities in which Vario was involved. The Agent stated that during 1965 he had observed Vario and co-conspirator DePasquale standing outside a house looking up and down the street. Shortly thereafter, a police car drove slowly by. Vario and DePasquale entered a vehicle and drove to an intersection where the same police car came up behind the vehicle in which Vario and DePasquale were riding. The cars then drove off together. Taken as a whole, it was for the jury to decide whether the Agent's testimony would support an inference that Vario and DePasquale were receiving police protection.

Vario's attorney objected to the admission of this testimony at trial and here argues that this evidence had no probative value but served only to indicate that Vario "was a bad man, deserving of conviction on whatever charge the government sought to bring against him. [citation omitted] It really added little as to what gross income [came] into his hands. Nor did it evidence that he was in the policy business as opposed to any other illicit endeavor." (Appellant's Brief at 16–17).

■ The rule in this Circuit regarding the introduction of another crime (here, by inference, bribing policemen) is that such evidence is admissible only if it is substantially relevant to some other purpose than to prove criminal character. United States v. Bozza, 365 F.2d 206, 213 (2d Cir. 1966); United States v. Keilly, 445 F.2d 1285, 1288 (2d Cir. 1971), cert. denied, 406 U.S. 962, 92 S.Ct. 2064, 32 L.Ed.2d 350 (1972).

■ In this case evidence tending to show inferentially that Vario had paid for police protection was properly admissible to show (1) that Vario's activities generated sufficient income to enable him to pay for such protection, which, another agent testified, would have cost between $900 and $1,000 per month; (2) that Vario had a source of income which he was concealing; and (3) that there was a relationship between Vario and his alleged co-conspirator DePasquale. United States v. Bonanno, 467 F.2d 14, 17 (9th Cir. 1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); Hanger v. United States, 398 F.2d 91, 102 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124, reh. denied, 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969). The admission of this type of evidence must of necessity be dependent to a great extent upon the trial judge's discretion. Such evidence would naturally be prejudicial to a defendant. On the other hand, if it is related in a reasonable way to the particular crime charged, the trial judge must weigh the effect of possible prejudice against relevancy. We cannot say that the trial

judge here misread the scales. *See* 1 Wigmore, Evidence § 29a (3rd ed. 1940).

Judgment affirmed.