UNITED STATES of America, Plaintiff,

v.

John K. WHITESIDE, Defendant.

Crim. A. No. 75–8.

United States District Court,
D. Delaware.

Nov. 12, 1975.

W. Laird Stabler, Jr., U. S. Atty., and Jack Beam, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

John Biggs, III and Robert H. Hallsted, Jr. of Biggs & Battaglia, Wilmington, Del., and Richard A. Kraemer of Duane, Morris & Heckscher, Paoli, Pa., for defendant.

## OPINION

LATCHUM, Chief Judge.

■ Defendant John K. Whiteside was found guilty by a jury on June 24, 1975, of three counts of willfully attempting to defeat a federal tax, 26 U.S.C. § 7201.[1] His motions for judgment of acquittal,[2] pursuant to Rule 29(c), F.R.Cr.P., or, alternatively, a new trial,[3] pursuant to Rule 33, F.R.Cr.P., are now before the Court. Whiteside's briefs[4] have offered several reasons for granting the requested relief: (1) insufficient evidence to support a conviction under 26 U.S.C. § 7201; (2) a verdict contrary to the weight of the evidence; (3) violation by the government of the Court's order for sequestration of witnesses; (4) improper investigative conduct requiring that the indictment be quashed; (5) the government's failure to call an essential witness; and (6) failure by the government to turn over a certain ledger sheet before trial as mandated by the general discovery order. In his reply brief, the defendant urges for the first time that the government's closing argument be examined

---

1. 26 U.S.C. § 7201 provides:
 "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

2. Docket Item 26.

3. Docket Item 27.

4. Docket Items 29 and 31.

for prosecutorial comment on Whiteside's decision not to testify.[5]

Briefly, Whiteside, a public accountant, prepared federal income tax returns for Arthur D. Henry and Thelma Henry, his wife, for the tax years 1965–70. (Tr. 8).[6] During the spring of 1969, Henry went to Whiteside for assistance in completing his 1968 tax returns. (Tr. 9–10). Henry, when informed of the amount of taxes owed, signed his check on which Whiteside entered his name as payee and an amount covering the Henrys' taxes and Whiteside's fee for preparing the return. (Tr. 11). The check was deposited in Whiteside's personal account (Tr. 5), but the Internal Revenue Service received neither payment of the taxes nor the tax return forms.[7] (Tr. 75–77). With variations not relevant here, Whiteside followed the same procedures with respect to the Henrys' tax returns due for the tax years 1969 and 1970. (Tr. 6, 18–24).

■ First, in assessing the sufficiency of the evidence on a post-verdict motion for judgment of acquittal, the Court must consider the evidence and the inferences to be drawn from it in the light most favorable to the government. *United States v. Feldman*, 425 F.2d 688 (C.A. 3, 1970); *United States v. Joines*, 327 F.Supp. 253 (D.Del.1971).

■ Whiteside strenuously argues that the evidence is inadequate to support a conviction under 26 U.S.C. § 7201 for willfully attempting to defeat a tax.[8] In support of this contention, the defendant points to *United States v. Mesheski*, 286 F.2d 345 (C.A. 7, 1961)

and *Edwards v. United States*, 375 F.2d 862 (C.A. 9, 1967). Mesheski, like Whiteside, was a preparer of tax returns who took his clients' tax payments but diverted the funds to his personal use. Mesheski argued that his conduct would at most amount to a misdemeanor defined by what is now 26 U.S.C. § 7203, and his conviction was reversed because of the absence of affirmative conduct satisfying the willfulness requirement of 26 U.S.C. § 7201. *Mesheski*, however, has not been followed in any reported decision, and some courts have expressly rejected its reasoning. *United States v. Donovan*, 250 F.Supp. 463, 465–66 (W.D.Tex.1966); *United States v. Gase*, 248 F.Supp. 704, 705 (N.D.Ohio 1965).

In *Edwards, supra,* the defendant was a tax attorney who accepted checks from his clients in payment of their taxes and his fee, but he also failed to file their returns or to pay the taxes. Apparently, Edwards had encountered personal financial difficulty and treated funds in his escrow account as a source of loans which he would eventually repay. Thus, his conviction was reversed because "[n]othing in the record [suggested] that he ever intended the permanent evasion of any of his clients' taxes." *Id.* at 867. The court appears to have been persuaded that the misdemeanor charge of 26 U.S.C. § 7203 would have been appropriate instead of the felony charge of 26 U.S.C. § 7201 because the misdemeanor charge was perceived as requiring a lesser degree of willfulness. *Id.* at 865. However, the court in *Edwards* refused to follow *Mesheski* to the extent that the latter case

---

5. Only the claim of insufficient evidence is appropriate in a motion for judgment of acquittal. The remaining issues will be reviewed as potential grounds for a new trial. *See United States v. Wolfson*, 322 F.Supp. 798, 805–06 (D.Del.1971), *aff'd*, 454 F.2d 60 (C.A. 3, 1972), *cert. denied*, 406 U.S. 924, 92 S.Ct. 1792, 32 L.Ed.2d 124.

The other issues—evidentiary rulings and the jury charge—mentioned in the motions have not been addressed by the defendant in his briefs, and a review of the record shows that they are without merit.

6. "Tr." refers to the page number of the Trial Transcript. (Docket Item 28).

7. After the Henrys were notified in late 1972 that their taxes had not been paid, arrangements were made for payment. (Tr. 26).

8. It is clear that someone other than the taxpayer can be convicted of violating 26 U.S.C. § 7201. *See, e. g., Leathers v. United States*, 250 F.2d 159 (C.A. 9, 1957) (applying predecessor section).

held that "conduct of this character cannot constitute an attempt to evade or defeat the tax." *Id.* at 866. In *Edwards,* two elements of proof were required: affirmative conduct and willfulness. The conduct was deemed sufficient to support a conviction, but the lack of intent to deprive the government permanently of tax funds convinced the court that the higher level of willfulness specified under the felony statute had not been proved.

The rationale of *Edwards,* which made a distinction in the degree of willfulness for a misdemeanor and felony, was overruled by the Supreme Court in *United States v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973). The latter case held that the term "willfully" in 26 U.S.C. §§ 7201–07 had the same meaning when used in the felony and the misdemeanor statutes. The Court noted and rejected the *Edwards* approach. *Id.* at 351 n.3, 93 S.Ct. 2008. Thus, while the result reached in *Edwards* at first glance seems to aid Whiteside, when read in light of the *Bishop* rejection of its fundamental distinction between § 7201 and § 7203, *Edwards* provides no support for his position.

 Conviction under 26 U.S.C. § 7201 requires both an affirmative act and willfulness. Preparing the Henrys' tax returns, accepting payment of their taxes, and depositing the funds to his personal account satisfy the requirement of an affirmative act. Whiteside effectively defeated the collection of the taxes due.

██ In order for Whiteside's actions to have been willful within the meaning of 26 U.S.C. § 7201, they must have been done with a "bad purpose or evil motive." *United States v. Bishop, supra* at 360–361, 93 S.Ct. 2008; *United States v. Murdock,* 290 U.S. 389, 398, 54 S.Ct. 223, 78 L.Ed. 381 (1933). The jury could have found that Whiteside knew that the Henrys' money should have

been paid to the government but that he intentionally retained it, apparently for his personal use. Evidence of steps to deprive the government permanently of its tax funds satisfies the "evil motive" standard.[9] The evidence produced at trial clearly supports the inference that Whiteside's failure to forward payment to the government was not the result of carelessness, neglect or inadvertence.

In sum, the evidence was sufficient to support a conviction of willfully attempting to defeat a tax as set forth in 26 U.S.C. § 7201.

██ Second, in considering a motion for a new trial, the Court may "weigh the evidence and consider the credibility of the witnesses," *United States v. Leach,* 427 F.2d 1107, 1111 (C.A. 1, 1970), *cert denied,* 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59; *United States v. Gross,* 375 F.Supp. 971, 973–74 (D.N.J.1974), *aff'd,* 511 F.2d 910 (C.A. 3, 1975), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (Nov. 3, 1975), but the remedy is conferred only in "exceptional cases." *United States v. Pepe,* 209 F.Supp. 592, 595 (D.Del.1962), *aff'd,* 339 F.2d 264 (C.A. 3). Defendant, in arguing that the jury's verdict was against the weight of the evidence, asserts that "[h]e consistently maintained that he sent checks for the taxes to the Henrys with the returns for Mrs. Henry's signature." (Docket Item 29, pages not numbered). This is a misstatement of what occurred at trial because Whiteside elected not to testify. The crucial testimony providing the evidentiary support for each element of each offense was virtually unchallenged. The Court has carefully reviewed the trial record and has concluded that the jury's verdict was consistent with the evidence adduced.

Third, as the trial commenced, the Court, at defendant's request, orally ordered the government's witnesses be sequestered.[10] The government violated

---

9. *Cf. Edwards v. United States, supra* (no indication of permanent evasion).

10. Rule 615, F.R.Evid. The parties agreed that evidentiary rulings would be governed by

this order when the Assistant United States Attorney discussed the trial testimony of government witnesses with Agent Bartlett, the government's chief investigator of Whiteside's actions, before Bartlett testified.[11] The appropriate remedy, Whiteside argues, is a new trial.

 Violation of a sequestration order does not automatically preclude a witness from testifying, *United States v. Vario*, 484 F.2d 1052, 1055 (C.A. 2, 1973), *cert. denied*, 414 U.S. 1129, 94 S.Ct. 867, 38 L.Ed.2d 753 (1974); *United States v. Littwin*, 338 F.2d 141, 144 (C.A. 6, 1964), *cert. denied*, 380 U.S. 911, 85 S.Ct. 896, 13 L.Ed.2d 797 (1965), and, therefore, unless Whiteside can show that he was harmed by the government's improper actions, it is unnecessary to order a new trial. *United States v. Miller*, 499 F.2d 736, 742 (C.A. 10, 1974). Whiteside has been unable to indicate that he was prejudiced by violation of the sequestration order. Furthermore, even if Bartlett's testimony had been excluded, the government's case would not have been significantly weakened.

 Moreover, Whiteside failed to object when he first learned of the government's breach of the sequestration order; at that point, the Court could

have considered a motion to strike Bartlett's testimony. Whiteside's substantial rights were not affected by violation of the sequestration order, and, therefore, the draconian relief of a new trial is unwarranted.[12] See Rule 103, F.R.Evid.

 Fourth, Whiteside now suggests that his indictment should be dismissed because of what he perceives to have been the government's improper investigatory conduct. An undercover Internal Revenue Service Agent visited Whiteside and gave him the opportunity to prepare a false tax return, (Tr. 202), but Whiteside filled out the return correctly. Also, the government obtained copies of sixteen returns that he had prepared to investigate the honesty of his services. (Tr. 206–208). During this period, Whiteside was not warned that he was being investigated because of his activities with the Henrys. Essentially, Whiteside is arguing that, if the government notifies an individual that he is under investigation for one possible violation, it cannot indict the individual for other violations which were investigated concurrently unless the individual was warned of the latter investigation. The defendant has been unable to cite any authority for this proposition, and the Court concludes that this argument is without merit.[13]

11. Tr. 194–95.

12. However, it is troubling that it was the Assistant United States Attorney who was responsible for breach of the sequestration order. Had Whiteside been able to show a measurable portion of harm from the breach of the Court's order, this factor would have become significant. *Cf. United States v. Bostic*, 327 F.2d 983 (C.A. 6, 1964).

Furthermore, the government in its brief emphasizes that Bartlett was the agent in charge of the case and therefore should have been exempted from the sequestration order. *See United States v. Strauss*, 473 F.2d 1262 (C.A. 3, 1973). This argument, however, is not responsive to Whiteside's contention because the Court's order did include Bartlett. The government's position that Bartlett was protected by Rule 615(3), F.R.Evid., should have

been raised at the time defendant moved to sequester the witnesses and not as a post hoc rationalization for violating the Court's order. *But see United States v. Herbert*, 502 F.2d 890, 894 (C.A. 10, 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403 (1975).

13. Furthermore, Rule 12(b)(2), F.R.Cr.P., provides that challenges to the validity of an indictment must be raised before trial unless the defendant can show cause for his procrastination. Because the government's activities which aroused Whiteside's ire involved Whiteside directly, it is readily apparent that he knew of them and could have brought forth these charges in a timely fashion. *See Sewell v. United States*, 406 F.2d 1289 (C.A. 8, 1969); *United States v. Garnes*, 156 F.Supp. 467 (S.D.N.Y.1957), *aff'd*, 258 F.2d 530 (C.A. 2, 1958), *cert. denied*, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637 (1959).

the new rules even though the trial was held before the effective date.

■ Fifth, Whiteside claims that the government's failure to call Mrs. Henry as a prosecution witness requires a new trial. Apparently, Whiteside contends that the government had to prove that Mrs. Henry did not receive the tax returns from Whiteside. However, the evidence offered by the government was sufficient without Mrs. Henry's testimony to sustain the jury's verdict. Furthermore "[i]t has long been held that the government is not required to call every witness who might be able to give some evidence about the crime." *United States v. Wolfson, supra,* at 822. Thus, the government's failure to call Mrs. Henry as a witness does not provide a basis for a new trial.

■ Sixth, pursuant to the Court's discovery order,[14] the government was obligated to produce before the trial copies of all documents which it intended to use at trial. The government at trial used a ledger sheet (PX 19) from the accounting firm for which Whiteside was working when he prepared the Henrys' tax return. (Tr. 90–92). However, the ledger sheet was not shown to defendant until trial. The Assistant United States Attorney represented to the Court that he was unaware of the existence of this document until two days before trial. (Tr. 67). The government sought to use the ledger sheet, a carbon copy receipt issued to Henry by Whiteside, and the original receipt issued to someone else as evidence of the willfulness of Whiteside's actions. Whiteside argues that the government's failure to produce the document before trial entitles him to a new trial. A discovery order is not intended to preclude the use of newly discovered evidence. The government was not aware of the existence of this document until two days before trial, and any violation of the discovery order was not willful. Moreover, the defendant was notified of the document's existence well before it was used at trial. Most importantly, Whiteside has been unable to show how he was prejudiced by the Court's decision to admit the ledger sheet. Therefore, this failure by the government to produce the ledger sheet before trial does not constitute an appropriate basis for granting a new trial. *Cf. Mullins v. United States,* 487 F.2d 581 (C.A. 8, 1973).

■ Finally, Whiteside has urged the Court to review carefully the transcript[15] of the Assistant United States Attorney's jury summation to determine if it contains any constitutionally proscribed references to the defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Three comments could possibly be viewed as improper,[16] but they certainly made no explicit reference to the failure of Whiteside to testify. *United States v. Noah,* 475 F.2d 688, 696 (C.A. 9, 1973), *cert. denied,* 414 U.S. 821, 94 S.Ct. 119, 38 L.Ed.2d 54; 414 U.S. 1095, 94 S.Ct. 728, 38 L.Ed.2d 553. "The test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Hayes v. United States,* 368 F.2d 814, 816 (C.A. 9, 1966); *accord United States v. Chaney,* 446 F.2d 571, 576 (C.A. 3, 1971), *cert. denied,* 404 U.S. 993, 92 S.Ct. 543, 30 L.Ed.2d 546; *United States ex rel. Leak v. Follette,* 418 F.2d 1266, 1268–70 (C.A. 2, 1969), *cert. denied,* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970). The statements of the prosecutor when viewed in context would not reasonably be considered by the jury as comment on Whiteside's

---

14. Docket Item 19.

15. The closing argument (Docket Item 32) was not transcribed until after all briefs had been submitted.

16. "What does Mr. Whiteside say?" (Docket Item 32, p. 3).

"There has been no defense in this case other than cross-examination of Government witnesses. . . ." *Id.,* p. 9.

"Why is there no defense concerning why the returns were not filed. . . ." *Id.,* p. 12.

failure to testify. Nor is there any suggestion that Whiteside was so uniquely positioned that only he could provide the exculpatory information. Furthermore, the Court's instructions made it clear that "no inference of any kind" could be drawn by the jury from Whiteside's failure to testify. (Tr. 275–76). In sum, the Assistant United States Attorney's statements cannot be construed as constitutionally proscribed comment on Whiteside's failure to testify.

An order will be entered denying defendant's motions for judgment of acquittal and for a new trial.