743 F.2d 1359
 16 Fed. R. Evid. Serv. 603
 UNITED STATES of America, Plaintiff-Appellee,
v.
MULTI-MANAGEMENT, INC., and Warren D. Hill, Defendants-Appellants.
and
UNITED STATES of America, Plaintiff-Appellee,
v.
MULTI-MANAGEMENT, INC., Karl H. Herrmann, Jr., a/k/a Karl
Von Herrmann, Warren D. Hill, and Eugene Smith, Defendants,
and
Robert Monforton, Defendant-Appellant.
 Nos. 84-3003, 84-3004.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 8, 1984.
Decided Sept. 28, 1984.
 
 K.M. Bridenstine, Polson, Mont., Ann S. German, Keller & German, Kalispell, Mont., for defendants-appellants.
 Carl E. Rostad, Asst. U.S. Atty., Great Falls, Mont., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before PECK*, WRIGHT, and FARRIS, Circuit Judges.
 JOHN W. PECK, Senior Circuit Judge:
 
 
 1
 Robert Monforton appeals from a judgment of conviction for conspiracy, 18 U.S.C. Sec. 371, entered upon a jury verdict. Co-defendants Warren D. Hill and Multi-Management, Inc. (MMI) appeal from judgments of conviction for wire fraud, 18 U.S.C. Sec. 1343, and conspiracy, 18 U.S.C. Sec. 371, also pursuant to a jury verdict. Monforton argues on appeal that the evidence was insufficient to convict him and that he is entitled to acquittal due to the government's violation of a pretrial order arising from its suppression of Brady material and its offering at trial for admission of a previously undisclosed document. Hill and MMI argue that the trial court committed reversible error by denying the motion of their joint counsel to withdraw as counsel for MMI due to a potential conflict of interest. Finally, all defendants argue that the trial court abused its discretion by admitting, in the absence of a limiting instruction, evidence of fraudulent acts not charged in the "overt acts" section of the indictment and that the improper statements of the prosecutor in closing argument deprived defendants of their right to a fair trial. Because we find none of the arguments to be meritorious, we affirm.
 
 I. Facts
 
 2
 MMI, along with sister corporations W.D. Hill Farms, Inc. and Diverse Ag-Properties, Inc., were incorporated in Delaware with their principal places of business in Great Falls, Montana. Hill was MMI's chairman of the board. Monforton was a director who also held the title of Senior Vice-President. Hill and Monforton sat on the board of the sister corporations and Hill was president of W.D. Hill Farms, Inc. Karl Herrmann, Jr., who was a member of the board of each corporation, was the president of MMI. Eugene Smith was an employee of MMI.
 
 
 3
 MMI attempted to purchase approximately 230,000 acres in Montana and South Dakota. No deal went further than the execution of "buy/sell" agreements. MMI neither paid any money to secure options nor made partial purchase payments on the land.
 
 
 4
 On March 10, 1982, Smith and Herrmann prepared an oil and gas lease option agreement purporting to offer for sale or lease all of the oil and gas rights on the 230,000 acres. The document, which warranted title to the land, was signed by Hill, among other principals. On March 12, 1982, Smith and Monforton flew to Laramie, Wyoming and presented the offer to Warren Schroefel, a Wyoming businessman. Smith had previously contacted Schroefel concerning the oil and gas leases. Monforton presented three copies of the leases to Schroefel at the meeting and signed a waiver of a clause requiring commencement of work within sixty days. A second meeting was required because Schroefel questioned Monforton's authority to waive requirements of the leases.
 
 
 5
 On March 15, 1982, Hill and Monforton went to Laramie to meet with Schroefel. At this meeting Hill represented that he owned the properties at issue. An MMI corporate resolution, signed by Herrmann and Hill and authorizing Monforton and Hill to act on behalf of MMI, was given to Schroefel. Schroefel agreed to exercise a cash advance. Schroefel wired MMI $37,500.00 on March 19, 1982. On April 15, 1982, Schroefel wired an additional $16,000.00 to MMI.
 
 
 6
 During March 1982, Smith also approached a group of three men, James Fuller, Sr., James Fuller, Jr., and Gerald Hughes, who comprised a company, Fuller-Banks Energy, Inc., with a minerals option agreement on 230,000 acres that warranted title to the land. An agreement was finalized between Fuller-Banks Energy and MMI, through Herrmann and Hill, on April 14, 1982 and a check was written to secure the option.
 
 II. Proceedings
 
 7
 On June 13, 1983, a federal grand jury returned a five-count indictment in the United States District Court for the District of Montana charging MMI, Herrmann, Smith, Monforton, and Hill with conspiracy, in violation of 18 U.S.C. Sec. 371, and with wire fraud, in violation of 18 U.S.C. Sec. 1343. The overt acts section of the indictment did not include any allegations concerning the transaction involving Fuller-Banks Energy. On July 11, 1983, MMI, Hill and Monforton were arraigned, and each pleaded not guilty.[1] Trial originally was set for September 13, 1983. On motion of MMI and Hill, the trial court reset the date to November 1, 1983.
 
 
 8
 On September 1, 1983, FBI agent Frank Wilmot interviewed Ed Focher, an officer of MMI, who gave a statement indicating that he had signed Monforton's name to various documents (Focher statement). Monforton was informed of the Focher statement on October 15, 1983. Prior to that time Focher had fled to England. Monforton's subsequent motions for dismissal and for severance of prosecution were denied following an evidentiary hearing.
 
 
 9
 On the morning of the trial, prior to voir dire, counsel for MMI and Hill moved to withdraw from representation of MMI due to an alleged conflict of interest and to continue the matter on behalf of MMI to permit substitute counsel to prepare. The trial court declined to grant a continuance. Following voir dire, the trial court, after asking counsel for MMI and Hill if he had anything to add to his prior motions, cited Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), as directly on point and adhered to his denial of the motions.
 
 
 10
 At trial, evidence of a fraudulent transaction not described in the overt acts section of the indictment was admitted over the objections of defense counsel. The trial court declined to give Monforton's proposed instruction that this evidence had no relevance to Monforton. During final summation, the prosecution stated that the "federal grand jury, who heard much the same evidence" as the petit jury, had put the defendants in the courtroom. Following the objections of defense counsel, the trial court gave two cautionary instructions. On November 11, 1983, the jury returned a guilty verdict on the conspiracy charge and the substantive wire fraud charge against MMI and Hill; the jury convicted Monforton of conspiracy, but acquitted him on the substantive wire fraud charge. The trial court denied motions for a new trial and defendants filed timely notices of appeal.
 
 III. Issues
 A. Monforton
 1. Sufficiency of Evidence
 
 11
 Monforton initially argues that the evidence was insufficient to support his conviction on the conspiracy count because there was no evidence of his participation in the conspiracy. We do not agree.
 
 
 12
 When reviewing a claim of insufficiency of evidence to support a criminal conviction, an "appellate court must determine, after viewing the evidence in the light most favorable to the prosecution, whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Becker, 720 F.2d 1033, 1035 (9th Cir.1983)." United States v. Ospina, 739 F.2d 448 at 450-451 (9th Cir.1984). In viewing the evidence in favor of the government, the court must draw all reasonable inferences favorable to the government. United States v. Cusino, 694 F.2d 185, 187 (9th Cir.1982), cert. denied, 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983).
 
 
 13
 Not only did the evidence show that Monforton was a principal in each of the three corporations involved in the sale of the oil and gas leases, but an MMI corporate resolution empowered Monforton to act on behalf of MMI. Evidence also showed that Monforton made two trips to Laramie, Wyoming to meet with Schroefel in conjunction with the sale of the oil and gas leases. The agreement contained Monforton's signature, waiving a drilling requirement contained therein. Additionally, Smith testified that Monforton made the first trip to Laramie for the purpose of delivering the oil and gas agreement to Schroefel. Finally, both Smith and Schroefel testified that Monforton represented that the oil and gas lease rights were absolutely vested in Hill or W.D. Hill Farms, Inc. This evidence was more than sufficient to support a finding that Monforton was a member of the conspiracy to commit wire fraud.
 
 2. Violations of the Pretrial Order
 
 14
 Monforton argues that the government committed violations of the pretrial order by failing to disclose in a timely fashion two documents: the Focher statement and Schroefel's copy of the oil and gas lease options agreement. Monforton argues that the tardy disclosure of the September 1, 1982 Focher statement on October 15, 1982 violated the dictates of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), because the fact that Monforton's name had been forged on various documents was crucial to his defense that he was not a major figure in MMI. Monforton contends that the trial court committed reversible error in denying, following an evidentiary hearing, his motions to dismiss the indictment and to sever the prosecution based on the government's failure to timely disclose the Focher statement. We do not agree.
 
 
 15
 Assuming that this material is exculpatory and material to either guilt or punishment, see United States v. Van Brandy, 726 F.2d 548, 551 (9th Cir.1984), we nevertheless do not find that the tardy disclosure is a reversible Brady violation. Monforton was made aware of the Focher statement three weeks prior to trial. Monforton's counsel made reference to the statement at trial in questioning Monforton and in developing the defense that Monforton was merely a pawn in the fraudulent transactions. In such circumstances, even though the government should have disclosed the Focher statement more promptly and the government's delay is not to be condoned, Monforton has not established such prejudice as would warrant reversal. United States v. McClintock, 734 F.2d 438, 446 (9th Cir.1984).
 
 
 16
 Monforton also argues that the production and admission of Government Exhibit Number 4, Schroefel's copy of the oil and gas lease option agreement, which contained a valid signature by Monforton, violated Fed.R.Crim.P. 16 because Monforton and his counsel had not been made aware of its existence prior to trial. Because the record contains no suggestion that the government either was aware of the document or had possession or control of it until trial, when Schroefel produced it, the government's failure to produce it prior to trial was not a violation of Fed.R.Crim.P. 16. United States v. Bailleaux, 685 F.2d 1105, 1113 (9th Cir.1982). Moreover, even if we were to hold that the government had violated Fed.R.Crim.P. 16 by not producing this document prior to trial, its admission by the trial court would not constitute an abuse of discretion. United States v. Gee, 695 F.2d 1165, 1168 (9th Cir.1983).
 
 B. Hill and MMI
 
 17
 Hill and MMI argue that the trial court abused its discretion in denying the motion to withdraw from representation of MMI made by counsel for Hill and MMI due to an allegedly clear possibility of a conflict of interests. Hill and MMI also contend that the trial court erred when it treated the motion, in part, as one for continuance. We disagree.
 
 
 18
 Holloway v. Arkansas, supra, requires a trial court either to accept counsel's representations concerning the existence of a conflict of interests or to take adequate steps of its own to insure that there is no conflict. United States v. Morando, 628 F.2d 535, 536 (9th Cir.1980). See generally Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). In the present case, the trial court inquired on two occasions as to the basis for counsel's assertion that a conflict existed. Counsel merely stated that he had recently learned of a possible conflict. On neither occasion did counsel make an adequate showing of the existence of an actual conflict of interest to have warranted the trial court's granting the motion for withdrawal. See United States v. Mers, 701 F.2d 1321, 1328 (11th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 481 & 482, 78 L.Ed.2d 679 (1983).[2] Consequently, we conclude that the trial court did not err in denying the motion by counsel to withdraw from representation of MMI.
 
 C. Monforton, Hill and MMI
 
 19
 1. Admission of Evidence of the Fuller-Banks Energy Transaction
 
 
 20
 All of the defendants argue that the trial court committed reversible error by admitting evidence of the Fuller-Banks Energy transaction. The defendants contend that the evidence was offered as evidence of other crimes admissible under Fed.R.Evid. 404(b) only upon a trial court's determination under Fed.R.Evid. 403 that the probative value of the evidence is not substantially outweighed by its prejudicial effect. Defendants assert that the trial court failed to make this determination.
 
 
 21
 In United States v. Bailleaux, supra, this court enunciated the following principles for admission of evidence of other criminal acts:
 
 
 22
 Before evidence of [other] criminal conduct may be admitted for these other purposes, the following prerequisites must be met: (1) proof that the defendant committed the other crime must be clear and convincing; (2) the prior criminal conduct must not be too remote in time from the commission of the crime charged; (3) the prior criminal conduct must, in some cases, be similar to the offense charged; and (4) the prior criminal conduct must be introduced to prove an element of the charged offense that is a material issue in the case. See United States v. Herrera-Medina, 609 F.2d 376 (9th Cir.1979); United States v. Myers, 550 F.2d 1036 (5th Cir.1977); United States v. Frederickson, 601 F.2d 1358 (8th Cir.), cert. denied, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979). Once these prerequisites have been satisfied, the evidence is admissible for those purposes permitted by Rule 404(b) if the court determines that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. This balancing is committed to the sound discretion of the district court. United States v. Federico, 658 F.2d 1337 (9th Cir.1981).
 
 
 23
 685 F.2d at 1109-10 (footnote omitted). The evidence of the Fuller-Banks Energy transaction was properly admitted as proof of the existence of the conspiracy charged, United States v. Bonanno, 467 F.2d 14, 17 (9th Cir.1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), and of a common plan or intent, United States v. Testa, 548 F.2d 847, 851-52 (9th Cir.1977). Each of the four prerequisites stated in Bailleaux, supra, were met. The probative value of the evidence was not substantially outweighed by any prejudicial effect. In sum, the trial court did not abuse its discretion in admitting the evidence. United States v. Nadler, 698 F.2d 995, 1000 (9th Cir.1983).
 
 
 24
 Hill and MMI argue, however, that the trial court, sua sponte, should have given a limiting instruction, even though, as they concede, they did not request one. This argument is meritless. It is well-settled that where no limiting instruction is requested concerning evidence of other criminal acts, the failure of the trial court to give such an instruction sua sponte is not reversible error. United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); United States v. Aims Back, 588 F.2d 1283, 1287 (9th Cir.1979).
 
 
 25
 Monforton argues that the admission of the evidence without a cautionary or limiting instruction in his case was reversible error because he not only requested such an instruction but proposed one.[3] Again, we do not agree. We approve the giving of a proper limiting instruction in circumstances such as these, in which the evidence may be considered by the jury only as it relates to the existence of the conspiracy or the intent or common plan of the defendants. Cf. United States v. Miller, 725 F.2d 462, 466 (8th Cir.1984). We decline to hold, however, that the trial court's refusal to give an instruction, such as the one proposed, which is manifestly intended to present the defendant's construction of the evidence as opposed to the government's, is an abuse of discretion. See United States v. Hall, 552 F.2d 273, 275 (9th Cir.1977).
 
 2. Government's Closing Argument
 
 26
 At the beginning of the government's rebuttal argument to the jury, the prosecutor made a statement that the government conceded at oral argument to have been improper.[4] Counsel for Hill and MMI immediately objected and the trial court directed the jury to disregard the prosecutor's remarks. In response to a request from counsel for Monforton, the trial court gave a further cautionary instruction concerning the grand jury.
 
 
 27
 All defendants contend that the statement was improper and warrants reversal of their convictions, arguing that improper prosecutorial references to the grand jury warrant reversal and a new trial. See, e.g., United States v. Cummings, 468 F.2d 274, 278 (9th Cir.1972). Although we do not condone the comments of the prosecutor, the admonition and the instruction of the trial court was sufficient to remove any prejudicial impact. See United States v. Polizzi, 500 F.2d 856, 889-90 (9th Cir.1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); United States v. Sutton, 446 F.2d 916, 922 (9th Cir.1971), cert. denied, 404 U.S. 1025, 92 S.Ct. 699, 30 L.Ed.2d 675 (1972). Accordingly, we hold that the comments of the prosecutor do not warrant reversal.
 
 IV. Conclusion
 
 28
 In sum, we hold that each of the arguments raised on appeal are without merit. Accordingly, we affirm the judgments of conviction entered on the jury verdicts.
 
 
 29
 Affirmed.
 
 
 
 *
 Circuit Judge John W. Peck, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 Herrmann is currently of fugitive status under warrant and resides in England. Smith pleaded nolo contendere prior to trial. Neither Herrmann nor Smith is a party to these appeals
 
 
 [2]
 The government's contention that even if an actual conflict of interest had been shown, granting of the motion for withdrawal would not have been required absent a showing of prejudice is inaccurate in light of the Supreme Court's holding in Cuyler v. Sullivan, supra, 446 U.S. at 349-50, 100 S.Ct. at 1718-1719, that a showing of an actual conflict of interests supports a presumption of prejudice. See Strickland v. Washington, --- U.S. ----, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (construing Cuyler as holding "that prejudice is presumed when counsel is burdened by an actual conflict of interest.")
 
 
 [3]
 Monforton proposed the following instruction:
 You are instructed that nothing presented to you by the witnesses James Fuller, Sr., James Fuller, Jr., or Mr. Hughes relates to any offenses charged against the Defendant Robert Monforton.
 
 
 [4]
 The prosecutor made the following statement:
 Ladies and gentlemen of the jury, during the closing arguments of the defense counsel, the government, namely myself, had been accused of everything from wearing the wrong kind of tie, being hard-hearted--let me make one thing very, very clear--25 people put Mr. Monforton and Mr. Hill in this courtroom today. Mr. Hill and Mr. Monforton, through their acts, their willful fraud, perpetrated on Mr. Schroefel, and through the conspiracy on the Fullers and Hughes, were two of them. The other 23 were people just like yourselves, called the federal grand jury, who heard much of the same evidence.