**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul Rowton BAILLEAUX, Defendant-Appellant.**

**No. 81-1219.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1981.

Decided Aug. 30, 1982.

Rehearing and Rehearing En Banc Denied Dec. 14, 1982.

---

H. Dean Steward, San Diego, Cal., for defendant-appellant.

Raymond J. Coughlin, Jr., Asst. U. S. Atty., argued; M. James Lorenz, U. S. Atty., Raymond J. Coughlan, Jr., Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Before SCHROEDER and REINHARDT, Circuit Judges, and THOMPSON,* Senior District Judge.

REINHARDT, Circuit Judge.

Appellant Paul Rowton Bailleaux was convicted after a jury trial on three counts of a five count indictment. He was convicted of one count of conspiracy to interfere with commerce by threats or violence in violation of 18 U.S.C. § 1951 and two counts of substantive violations of 18 U.S.C. § 1951 arising out of attempted extortions in the San Diego and Palm Desert areas in California. Bailleaux appeals from his conviction alleging that (1) the trial court committed an abuse of discretion in denying his motion for a change of venue due to extensive pretrial publicity concerning the crimes charged; (2) the trial court abused its discretion in admitting evidence relating to appellant's prior criminal conduct and conviction in Oregon; and (3) it was reversible error for the district court to admit evidence of a taped conversation between appellant and his former business associate because appellant was not advised of the existence of the tape until after he had testified on direct examination.

We affirm the judgment of the district court.

I

Appellant's first contention is that he should have been granted a change of venue because the jury was prejudiced by adverse pretrial publicity concerning the crimes with which he was charged. A motion for a change of venue is committed to the sound discretion of the district court, and a denial of such motion should be reversed only upon a showing of a clear abuse of discretion. *United States v. Pry*, 625 F.2d 689 (5th Cir. 1980), *cert. denied*, 450 U.S. 925, 101 S.Ct. 1379, 67 L.Ed.2d 355 (1981). Appellant has made no such showing.

It is not all publicity that causes prejudice to a defendant, but only that publicity that operates to deprive the defendant of a fair trial. *United States v. Mandel*, 415 F.Supp. 1033, 1073 (D.Md.1976). The most common form of publicity that deprives the defendant of a fair trial is "the type that proclaims the defendant's guilt in advance of trial and prejudices the minds of

* Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

the public against the defendant to such an extent that most people are unable to weigh the evidence objectively." *Id.* At oral argument, the appellant acknowledged that most of the publicity in this case focused on the crimes themselves rather than on the guilt or innocence of the appellant. Moreover, to the extent that the publicity did focus on an individual suspect, it was directed in part to another individual who was initially indicted for the same offenses. The charges against that individual were dismissed prior to appellant's indictment.

■ The district court found that the media coverage of the crimes themselves was basically factual and neutral, and that much of it occurred more than a year prior to the date on which appellant's jury was selected. The coverage was not of such a nature as to preclude a reasonable juror from independently assessing appellant's guilt on the basis of the evidence produced at trial. Indeed, appellant was convicted on only three counts of a five count indictment. Thus, appellant does not appear to have been subject to publicity of the type that so prejudices the minds of the public that "most people are unable to weigh the evidence objectively."

Appellant argues, however, that because a public opinion poll he commissioned demonstrated that over 80% of the general public had heard or read about the crimes and because virtually all of the veniremen indicated that they had heard of the crimes, it was impossible to assemble a fair and impartial jury in the Southern District of California. The fact that a juror has heard or read about a crime does not mean that he or she cannot render an impartial verdict. In conducting the *voir dire* the district court was sensitive to appellant's claim that he had been prejudiced by extensive pretrial publicity and made careful inquiries of the prospective jurors as to their ability to render a fair and impartial verdict. Those jurors who voiced any doubt as to their ability to decide the case in an impartial manner were excused. Finally, the district court announced its willingness to reconsider appellant's motion for a change of venue

if it appeared after *voir dire* that an impartial jury could not be assembled. Under these circumstances, we cannot say that the district court abused its discretion in denying appellant's motion for a change of venue.

## II

■ Appellant next contends that the district court abused its discretion by (1) allowing the Government to offer evidence of the fact of appellant's prior conviction for a similar offense in Oregon, and (2) allowing the Government to offer substantive evidence of the acts on which the Oregon conviction was based. Courts must be extremely careful to guard against the danger that defendants will be convicted because they have previously committed a serious criminal offense rather than because the Government has introduced evidence sufficient to prove beyond a reasonable doubt that they are guilty of the offense for which they are being tried. This danger exists whenever a jury is advised of the fact of a prior conviction, or evidence relating to earlier criminal conduct is admitted. For that reason, the use of such evidence must be narrowly circumscribed and limited. *See generally* Fed.R.Evid. 403, 404; *United States v. Powell*, 587 F.2d 443, 448–49 (9th Cir. 1978) (use of marijuana conviction to raise inference that defendant was disposed to commit marijuana offenses is prohibited); *United States v. Calvert*, 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976) (if evidence of other crimes is admitted, court should give limiting instruction indicating narrow purpose for which evidence may be used).

■ Evidence of prior criminal conduct is not admissible to show that the defendant has a "bad character" and is therefore likely to have committed the crime charged. Such evidence is admissible, however, for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, and identity. Fed.R.Evid. 404(b). Before evidence of prior criminal conduct may be admitted for these other

purposes, the following prerequisites must be met: (1) proof that the defendant committed the other crime must be clear and convincing; (2) the prior criminal conduct must not be too remote in time from the commission of the crime charged; (3) the prior criminal conduct must, in some cases, be similar to the offense charged;[1] and (4) the prior criminal conduct must be introduced to prove an element of the charged offense that is a material issue in the case. *See United States v. Herrera-Medina*, 609 F.2d 376 (9th Cir. 1979); *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977); *United States v. Frederickson*, 601 F.2d 1358 (8th Cir.), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979). Once these prerequisites have been satisfied, the evidence is admissible for those purposes permitted by Rule 404(b) if the court determines that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Fed.R. Evid. 403. This balancing is committed to the sound discretion of the district court. *United States v. Federico*, 658 F.2d 1337 (9th Cir. 1981).

■■■ Appellant first claims that the prejudice created by the admission into evidence of his prior conviction outweighs any probative value that it may have had. However, we need not determine whether the four part test was met with respect to that evidence nor whether the appellant was unfairly prejudiced by its admission. It was appellant himself who first offered the evidence of the prior conviction while testifying on direct examination. If any prejudice resulted from the admission of his conviction, it is directly attributable to appellant. Moreover, having opened the subject in his direct testimony, appellant may not object to the Government's subsequent inquiries into the relevant aspects of his prior conviction. The Government contends

that it was necessary to cross-examine appellant regarding the conviction to negate the inference that appellant confessed to the Oregon crimes because he was guilty, but denied the San Diego crimes because he was innocent. We agree that the Government's inquiry into appellant's prior conviction on cross-examination was proper.

■■■ The appellant also contends that the trial court abused its discretion in allowing the Government to introduce, in its case-in-chief, substantive evidence of the crimes appellant was convicted of in Oregon. The similarities between the offenses charged in this case and the crimes of which appellant was convicted in Oregon are dramatic. Each incident involved a bizarre extortion attempt based on the poisoning of a food item in a store and a subsequent demand for diamonds to forestall further poisonings. There were other striking similarities in the way in which the crimes were carried out—the wording of the extortion notes, the method for contacting the extortionist via a local radio station, the type of poison used, and the procedure for dropping off the extortion payment. The Government argues that the evidence was independently admissible as evidence of conspiracy, *modus operandi* and identity under Federal Rule of Evidence 404(b). *See United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973) (evidence of prior illegal acts admissible to show material facts relating to conspiracy and to show that conspiracy was continuing along same lines); *United States v. Oliphant*, 525 F.2d 505, 507 (9th Cir. 1975), *cert. denied*, 424 U.S. 972, 96 S.Ct. 1473, 47 L.Ed.2d 740 (1976) (evidence of prior offense admissible where there was a "striking similarity" in *modus operandi*).

---

1. Although we stated in *United States v. Herrera-Medina*, 609 F.2d 376 (9th Cir. 1979), that the prior criminal conduct offered into evidence must be similar to the offense charged, this prerequisite obviously does not apply to all evidence offered under Rule 404(b). If the purpose of the proffered evidence is to show that the defendant's prior criminal conduct provided

him with opportunity, knowledge, preparation or motive, it may or may not be necessary that the prior conduct be similar to the offense charged. But when evidence is offered to prove identity, *modus operandi*, or absence of mistake or accident, the prior criminal conduct is relevant only if it is similar to the offense charged.

The Government satisfied the prerequisites under Rule 404(b) with regard to the evidence of appellant's prior criminal conduct in Oregon. (1) The Government produced several witnesses who testified most persuasively as to appellant's commission of the Oregon offenses; the proof was clear and convincing. (2) The Oregon offenses were committed only ten days prior to the California crimes. (3) As we have noted, the Oregon offenses were strikingly similar to the offenses with which appellant was charged in the Southern District of California. (4) The Government introduced the evidence for the purpose of establishing *modus operandi* and, ultimately, the identity of the perpetrator of the California offenses.

Appellant concedes that the evidence of the Oregon crimes was probative, but argues that the court should have excluded the evidence because it was "prejudicial." All evidence which tends to establish the guilt of a defendant is, in one sense, prejudicial to that defendant, but that does not mean that such evidence should be excluded. It is only when the probative value of evidence is "substantially outweighed by the danger of *unfair* prejudice," Fed.R. Evid. 403 (emphasis added), that relevant evidence should be excluded.

▆▆▆ Evidence may have both probative and non-probative aspects. The probative value of evidence must be measured by its "tendency to make the existence of any fact that is of consequence . . . more proba-ble or less probable than it would be without the evidence." Fed.R.Evid. 401. *Unfair* prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, *e.g.*, that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.[2] *See* Fed.R.Evid. 403 advisory committee note; J. Weinstein & M. Berger, *Weinstein's Evidence* §§ 403(03) at 403–15 to –17.

Rule 403 requires the district court to weigh the probative value of evidence against the effect of its non-probative aspect—and to assess the danger that admission of the evidence will *unfairly* prejudice the defendant. When the effect on the jury of the non-probative aspect of the evidence is likely to be substantially greater than the effect of the probative aspect, the evidence should be excluded under Rule 403. It follows that the greater the degree of probativeness possessed by the evidence, the greater the showing of unfair prejudice that will be required to exclude the evidence. Here, the probative value and the unfair prejudicial effect were both substantial, in one case because of the striking similarities between the unusual crimes and

2. Some of the difficulty in applying the balancing test of Rule 403 may result from its use of the word "prejudice" in its narrow legal sense. In its common usage, "prejudice" connotes unfairness. As used in Rule 403, however, the word "prejudice" means only a harmful effect. (In this sense, it is similar to its meaning in the phrase "prejudicial error." As used in that phrase, "prejudicial" merely means that there has been some significant effect on the outcome of the proceeding). Accordingly, in Rule 403, the term "*unfair* prejudice" is used to convey the meaning that the word "prejudice" has when it is used in its normal sense, and it is only "unfair prejudice" that may, in some instances, require exclusion of the evidence.

As used in Rule 403, "unfair prejudice" means that the evidence not only has a significant impact on the defendant's case, (as opposed to evidence which is essentially harm-less) but that its admission results in some unfairness to the defendant because of its non-probative aspect. When there is a danger that the defendant's case will be affected because of the non-probative aspect of evidence offered for admission, we employ the balancing test of Rule 403 and exclude the evidence, but only when the danger of "unfair prejudice" substantially outweighs the probative value.

Confusion over the proper interpretation of Rule 403 is illustrated by the argument advanced by defense counsel below. The Government contended that it could not prove its case in the absence of the evidence regarding the Oregon offenses. The defense attorney responded that this fact demonstrated that the evidence was highly prejudicial. He was correct. However, the issue was whether the evidence was *unfairly* prejudicial. That is an entirely different question.

in the other because of the opprobrious nature of the prior offenses.

There is, of course, a non-probative aspect to all evidence of prior crimes or prior criminal conduct, and jurors, no matter how conscientious they are, may find it difficult to compartmentalize their mental processes and consider only the probative aspect while disregarding the fact that a defendant has a criminal record or a "bad character." This factor must be weighed in the balance in every case along with the particularized prejudice that results from the specific nature of the prior criminal conduct.

 In balancing the probative value of evidence against the danger of unfair prejudice, the trial court should also consider the need for evidence of prior criminal conduct to prove a particular point. *United States v. Lawrance*, 480 F.2d 688, 691–92 n.6 (5th Cir. 1973); C. McCormick, *McCormick's Handbook of The Law of Evidence* § 190 at 453 (2d ed. 1972).[3] The trial court is in the best position to evaluate the need for the evidence of prior criminal conduct in light of all of the circumstances at trial, and its determination in this regard, like the remainder of the balancing test under Rule 403, is committed to its sound discretion.[4]

Having carefully evaluated all of these factors, we hold that the evidence relating to the Oregon crimes was properly admissible because it was so highly relevant to proof of *modus operandi* and identity. While the danger of unfair prejudice was considerable, it did not "substantially outweigh" the probative value of the evidence. Moreover, both immediately after the introduction of the evidence and at the conclusion of the case, the trial court carefully instructed the jury as to the limited purpose for which the evidence could be used. Under these circumstances, we cannot say that the district court abused its discretion in admitting the evidence of the Oregon offenses.

### III

Appellant's last contention is that the district court erred in allowing the Government to introduce into evidence a taped conversation between appellant and his business associate. The taped conversation was introduced by the Government during its cross-examination of appellant in order to impeach appellant's testimony that he travelled to San Diego on a business matter at the request of his business associate. According to appellant's testimony on direct examination, he was supposed to meet his associate in San Diego, but after three days of waiting for him to appear, appellant left San Diego. Before the tape was introduced, appellant admitted on both direct and cross-examination that he had never received an explanation from his associate regarding his failure to appear in San Diego. The tape contains the first conversation between appellant and the associate after the alleged business trip. During that conversation appellant did not question his associate about his failure to appear in San Diego.

When the Government asked appellant to listen to the tape on cross-examination, appellant's counsel objected to the introduction of the tape on the ground of lack of foundation. The judge told government counsel to see if the defendant could identify the tape. It was then played and the defendant identified his voice. Appellant's counsel then stated that the content of the tape was irrelevant since "he's identified his voice" and then stated "Your Honor, may I also note for the record that's the first time I've ever heard that tape despite all my requests for discovery."

Appellant was not told of the existence of the tape until he was being cross-examined. Prior to trial, appellant made several re-

---

3. McCormick defines "need" as "the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution ...." *Id. See also United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977).

4. In this case, the Government clearly had a substantial need for the evidence. Although the Government possessed samples of the extortionist's voice and handwriting, the appellant denied that either was his and the Government had no direct evidence of the extortionist's identity.

quests for discovery from the Government, including a request that he be allowed to listen to "tapes made of conversations." Appellant claims that the tape should have been turned over to him pursuant to the provisions of Federal Rule of Criminal Procedure 16(a)(1)(A) and the obligation imposed on the Government by the Court's decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In his brief on appeal, appellant claims that he suffered prejudice when he elected to testify in his own defense without knowing of the existence of the tape. At oral argument, the appellant for the first time objected to the tape on the ground that it served to identify his voice, which was allegedly contained on a tape of an extortion attempt that was introduced by the Government. At trial the appellant denied that the voice on the extortion tape was his. In response, the Government claims that it did not "receive" the tape until the night before it was introduced at trial, that the relevance of the ostensibly innocuous conversation became apparent only after appellant testified on direct examination, and that the introduction of the tape was not prejudicial because appellant had previously stated on cross-examination that he never received an explanation from his business associate about the failed business meeting in San Diego.

■ Federal Rule of Criminal Procedure 16(a)(1)(A) requires the Government, on the request of the defendant, to make available to the defendant "any *relevant* written or recorded statements made by the defendant . . . . within the possession, custody, or control of the government, the existence of which is known, *or by the exercise of due diligence may become known,* to the attorney for the Government." *Id.* (emphasis added). The Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), obligates the Government to make available to the defendant all "evidence favorable to the accused upon request . . . where the evidence is material either to guilt or punishment . . . ." *Id.* at 87, 83 S.Ct. at 1196. Thus, while the decision in *Brady* requires disclo-

sure of all exculpatory material, Rule 16 requires the Government to turn over all *relevant* written or recorded statements by the defendants. The Government argues that it had no obligation under *Brady* to turn over the taped conversation because it was not exculpatory. We agree that the evidence was not exculpatory and thus not subject to disclosure under *Brady. United States v. Eddy,* 549 F.2d 108, 113 (9th Cir. 1976). Our determination does not, however, dispose of the issue regarding the Government's obligation under Rule 16 to provide the defendant with all *relevant* recorded statements.

■ The Government first argues that it had no obligation under Rule 16 to turn over the tape because the United States Attorney in charge of the case "had only received the tape the night before it was used." The Government's carefully phrased argument fails to address two important aspects of the obligation imposed by Rule 16. Rule 16 requires disclosure of recorded statement if, *inter alia,* (1) it is in the custody or control of the Government and (2) its existence is known or by the exercise of due diligence could have become known to the attorney for the Government. Rule 16 does not require that the statement be in the possession of the attorney for the Government; rather, the recorded statement is subject to disclosure if it is in the custody or control of "the government." In this case, the tape was in the possession of the FBI until it was turned over to the U.S. Attorney in charge of the case. Thus, it does not matter that the U.S. Attorney did not "receive" the tape until the night before appellant's testimony; it is enough for purposes of the custody requirement of Rule 16 that it was in the possession of the FBI. *United States v. Scruggs,* 583 F.2d 238, 242 (5th Cir. 1978) (Government is not excused from obligation under Rule 16 by the fact that documents were in possession of FBI).

Secondly, Rule 16 requires disclosure of the recorded statement if, in addition to being in the custody or control of the

Government, the existence of the tape is known or could have become known to the attorney for the Government through the exercise of reasonable diligence. The Government has failed to advise us whether the U.S. Attorney in charge of the case *in fact* knew of the existence of the tape; moreover, the Government does not argue that the U.S. Attorney could not have discovered the existence of the tape through the exercise of reasonable diligence. In light of the Government's complete failure to address the question of the U.S. Attorney's knowledge of the tape, we will assume that the U.S. Attorney could have discovered the tape through due diligence.

■ The Government next argues that the relevance of the tape for purposes of impeachment was not known until the defendant testified on direct examination. The Government contends that it has no duty to anticipate the nature of the defendant's testimony to determine if the statement may have some impeachment value. *See United States v. Gleason*, 616 F.2d 2 (2d Cir. 1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). There is a problem in implementing Rule 16(a)(1)(A) that results from the fact that the Government must determine what evidence in its possession may be relevant before it is fully advised as to the nature of the intended defense. The Government can easily assess what is relevant to its case, but it may not be possible for the Government to discern with any certainty what is relevant from the defendant's standpoint. The defendant, on the other hand, has a right to the recorded statements under Rule 16 if they are relevant, but cannot advise the government of their relevance to his case since he may not know of their existence. Under these circumstances, Rule 16(a)(1)(A) can fully serve its intended purpose only if the Government takes a broad view of what is relevant for purposes of that provision. We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert. Ordinarily, a statement made by the defendant during the course of the investiga-

tion of the crime charged should be presumed to be subject to disclosure, unless it is clear that the statement cannot be relevant. Where the Government is in doubt, the written or recorded statement should be disclosed, if a proper request is made.

The burden imposed on the Government by Rule 16 is a reasonable one. Rule 16(a)(1)(A) requires disclosure of a narrow category of evidence relating to matters already within the defendant's knowledge. Since the defendant was a party to the statement, he is aware of its contents. The principal fact that is revealed to the defendant by the disclosure of the statement is that the Government is also. In any event, the Government may, where necessary, obtain an ex parte protective order upon a proper showing under Rule 16(d).

■ The tape of the conversation introduced by the Government was relevant for impeachment purposes only because of the appellant's *failure* to mention the alleged San Diego business trip to his business associate. Thus, the Government's contention that it could not anticipate that the tape would become relevant for that particular purpose, *i.e.*, to impeach appellant's testimony about the San Diego trip, is not wholly without merit. But that is not the only purpose for which the tape was relevant. The Government knew that the identification of the extortionist's voice was a material issue in the prosecution. It is true that the Government presented four witnesses who identified the extortionist's voice on the tape of a telephone call to a Palm Desert store as belonging to the appellant and that the jury could compare appellant's voice in court to the extortionist's voice on the tape of the telephone call. But the existence of another tape, which contained a telephone conversation between appellant and his business associate, would clearly be relevant for purposes of comparison to the tape of the extortionist's voice. That the Government did not initially intend to rely on the tape for that purpose is immaterial to our determination that the tape constituted relevant evidence for purposes of

Rule 16. Here, the Government ultimately argued to the jury that the evidence relating to the tape had some relevance to the voice identification issue. That fact alone is sufficient to demonstrate that the tape fell within the test that the Government must apply in making its pre-trial determination of relevancy. Moreover, it is possible that a defendant might want to introduce a tape of this nature as part of his defense. He would certainly have a right to hear the tape and make that decision himself. The Government cannot make that choice for him by withholding the evidence.

We find that the tape was relevant within the meaning of Rule 16(a)(1)(A) and conclude that it should have been disclosed to appellant in accordance with the provisions of that rule.

■ Federal Rule of Criminal Procedure 16 provides that if a party violates the provisions of the rule, "the court may order such party to permit the discovery . . . , grant a continuance, or prohibit the party from introducing evidence not disclosed. . . ." It is error to admit into evidence a statement which has been withheld from the defendant in violation of Rule 16 if the defendant has not otherwise been afforded the opportunity to review the proffered evidence. *See United States v. Walker*, 538 F.2d 266 (9th Cir. 1976) (existence of tape not disclosed to defendant until middle of trial; held to be error, but harmless). However, reversal of a conviction is warranted upon a showing of nonconstitutional error only if it is more probable than not that the error materially affected the verdict. *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir. 1977); *see also United States v. Walker*, 538 F.2d at 268–69.

■ Insofar as the tape was used to impeach appellant, he had already stated on direct examination that (1) he had spoken briefly with his business associate on the telephone three weeks after the trip, and (2) he had never received an explanation from his business associate about the futile trip to San Diego. The appellant's failure to complain to his associate during the taped conversation was merely corroborative of that testimony. Thus, whatever damage was inflicted upon appellant's credibility by the evidence regarding the business trip to San Diego occurred before the tape was introduced by the Government.

In his brief on appeal, appellant argued that the failure of the Government to turn over the tape prior to trial prejudiced him by denying him the opportunity to fully consider the evidence against him before deciding to testify in his own defense. Appellant does not suggest how or why a pre-trial disclosure of the tape would have affected his decision to testify, and we think it clear it would not have. At oral argument, appellant raised for the first time the contention that admission of the tape was prejudicial because the prosecution asked him whether the voice on the tape was his and he was required to acknowledge that it was. Appellant argues that he suffered prejudice because his identification of his voice on the taped call to his business associate provided the jury with a basis for comparison to the voice of the extortionist on the Palm Desert tape.

It does not appear to us that the effect of appellant's identification of his voice on the non-disclosed tape was as great as appellant now contends. During closing argument the Government stressed the fact that the tape impeached appellant's testimony regarding the alleged "business trip" to San Diego. Although the Government also suggested that the voice on the Palm Desert tape could be compared to appellant's voice on the tape of his conversation with his business associate, the Government placed much greater emphasis on the fact that four other witnesses had identified appellant's voice on the Palm Desert tape. In addition, appellant's failure to object to the request that he identify the voice on the tape at trial and his failure to raise the voice identification as a ground of prejudice until oral argument on appeal indicate that appellant did not consider his identification of the voice on the call to his business associate to be significant at the time that it occurred.

In light of the fact that the appellant admitted committing the highly unusual Oregon crimes less than two weeks prior to the occurrence of the offenses charged, that the appellant, an Oregon resident, admitted that he then travelled to San Diego and was present there when the virtually identical offenses were committed in the Southern California area, that four witnesses identified appellant's voice on the extortion call to the Palm Desert store, and that the only handwriting expert called to testify stated that appellant had written two of the extortion notes, we cannot conclude that it is more probable than not that the error materially affected the verdict.[5]

The conviction is AFFIRMED.

---

5. It is questionable whether appellant properly objected to the introduction of the tape at trial so as to preserve the issue for appeal. Fed.R. Evid. 103. Appellant's counsel first objected to the tape for lack of foundation, a deficiency that was apparently corrected when appellant identified his voice in conversation with his business partner. Then appellant's counsel merely asked the court to "note for the record that's the first time I've ever heard that tape despite all my requests for discovery." In this respect, appellant satisfied the requirements of Rule 16(d)(2) by calling the court's attention to the Government's failure to comply with Rule 16. Under some circumstances, this might conceivably be enough to bring the admission of a statement in violation of Rule 16 within the plain error exception. Fed.R.Evid. 103(d). Since the Government does not contest appellant's right to rely on the alleged error on appeal, and since neither of the parties briefed or argued this point, we do not base our decision on Rule 103.