8 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Regino ARMENTA-LOPEZ, Defendant-Appellant.
 No. 92-50535.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 4, 1993.
Decided Oct. 7, 1993.
 
 Before: NORRIS, WIGGINS, O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Armenta-Lopez raises three arguments to challenge his convictions for violating 21 U.S.C. §§ 846 and 841(a)(1).[1] We affirm the convictions.
 
 
 3
 First, Armenta-Lopez argues that the district court erred by limiting the cross examination of government informant Timothy Williams. We review for an abuse of discretion the district court's decision to limit the scope of cross-examination. United States v. Dischner, 960 F.2d 870, 882 n. 12, opinion amended, 974 F.2d 1502 (9th Cir.1992), and cert. denied 113 S.Ct. 1290 (1993); United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). Under the abuse of discretion standard, we cannot reverse unless we have "a definite and firm conviction that the court below committed a clear error of judgment," United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992), and we must not substitute our own judgment for that of the district court. United States v. Egbuniwe, 969 F.2d 757, 761 (9th Cir.1992).
 
 
 4
 Generally, a trial court enjoys broad discretion to limit the scope of cross-examination. See Carriger v. Lewis, 971 F.2d 329, 332-33 (9th Cir.1992), cert. denied, 61 U.S.L.W. 3651 (1993). Reversal is unnecessary "as long as the jury receives sufficient information to appraise the biases and motivations of the witness." United States v. Guthrie, 931 F.2d 564, 568 (9th Cir.1991) (quoting United States v. Feldman, 788 F.2d 544, 554 (9th Cir1986), cert. denied, 479 U.S. 1067 (1987)). Here, Armenta-Lopez sought to cross-examine the government informant about the details of some of his criminal convictions in response to the informant's "self-serving" statements about the crimes on direct examination. The district court refused to allow cross-examination into the details of the past crimes. However, the court did permit the defendant to point out that the government had dropped numerous counts against Williams in exchange for guilty pleas in several of his criminal cases. Thus, the record reflects that the jury had adequate information on which to evaluate the credibility of the witness. See Guthrie, 931 F.2d at 568. Given the district court's broad discretion and because the details of a crime are at best only marginally relevant in evaluating a witness' credibility, we conclude that the district court did not abuse its discretion by limiting the scope of cross-examination of Williams.[2] See Guthrie, 931 F.2d at 568; see also United States v. Fortes, 619 F.2d 108, 118 (1st Cir.1980) (stating that a "court need not permit unending excursions into each and every matter touching upon veracity").
 
 
 5
 Second, Armenta-Lopez argues that the district court erred by refusing to admit evidence of several contacts Armenta-Lopez had with Williams prior to Williams becoming a government informant. The district court excluded the evidence as irrelevant. We review for an abuse of discretion the district court's decision to exclude the evidence. See United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991). Even if there is error, we need not reverse unless the prejudice from the error more probably than not materially affected the verdict. See United States v. Lui, 941 F.2d 844, 848 (9th Cir.1991).
 
 
 6
 Armenta-Lopez contends that the excluded evidence was relevant to his entrapment defense because it was probative of his lack of predisposition to commit the crime.[3] See United States v. Busby, 780 F.2d 804, 806 (9th Cir.1986). The excluded evidence consisted of five contacts with Williams over the course of two and a half years before Williams agreed to assist the government. Armenta-Lopez contends that on each occasion, Williams approached Armenta-Lopez relative to his interest in getting involved in the distribution of drugs in some respect and that each time he declined the invitation. We conclude that any error in excluding the testimony was harmless.
 
 
 7
 First, Williams's testimony at trial directly contradicted Armenta-Lopez's claims that he had met with Williams prior to August, 1991. Second, Armenta-Lopez does not contend that any of the excluded contacts related to the deal for which he was convicted. Third, the government presented considerable evidence demonstrating Armenta-Lopez's predisposition to commit the crimes. For example, the record shows that Armenta-Lopez initiated contact with Williams about the drug deal, that Armenta-Lopez called Williams repeatedly about the deal, and that recorded conversations indicate that Armenta-Lopez was not a reluctant participant. Accordingly, we conclude that any error in excluding the evidence more probably than not would not have affected the verdict.
 
 
 8
 Finally, Armenta-Lopez challenges the district court's formulation of a particular jury instruction. We review for an abuse of discretion the district court's formulation of jury instructions. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992). "Our inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991).
 
 
 9
 The challenged instruction stated: "An individual cannot claim he was entrapped simply because he was poor and could not resist the chance to make money." Armenta-Lopez does not and could not contend that this instruction did not accurately state the law. See United States v. Stenberg, 803 F.2d 422, 432 (9th Cir.1986). Rather, he argues that the instruction over-emphasized the government's view of the law, unnecessarily trivialized Armenta-Lopez's poverty, and gutted the entrapment defense. While Armenta-Lopez may not have wanted the instruction, we cannot conclude that the district court's decision to give a legally accurate instruction constituted an abuse of discretion. Accordingly, we reject Armenta-Lopez's challenge to the instruction.
 
 
 10
 AFFIRMED.
 
 NORRIS, Chief Judge, dissenting:
 
 11
 Because I believe the district court abused its discretion to the prejudice of defendant Armenta-Lopez, I respectfully dissent.
 
 
 12
 * As part of its trial strategy, the government chose to put its informant on the stand and to elicit detailed information about his criminal past. The district court permitted the informant to testify at length about his prior convictions and their circumstances. For instance, when describing his bribery and mail fraud conviction, he claimed actual ignorance of violating any law. See E.R. at 34. When describing his tax code conviction, he assured the jury that it was merely technical, and that he owed the Internal Revenue Service "no money whatsoever." Id. at 35. When explaining how he first met Armenta-Lopez, the informant described how he started up a local swap meet, which helped "make peace among the gang members," employed hundreds of people, merited plaques for community service, see id. at 38, and even made the front page of the food section of the Los Angeles Times. See id. at 44. When admitting his conviction for attempting to smuggle 200 kilograms of cocaine into the United States, the informant characterized himself as a passive player, see id. at 42-48, and notified the jury that he of course never used drugs himself, see id. at 42. All this testimony was admitted into evidence over the repeated objection of defense counsel. See, e.g., id. at 37, 38.
 
 
 13
 On cross-examination, Armenta-Lopez tried to challenge the informant's self-serving characterizations of his crimes, but the district court, sua sponte, sternly barred such cross-examination. The court admonished that the witness was not on trial and that the purpose of cross should extend to the "name of the felony and the fact of conviction only." Id. at 61, 63.
 
 
 14
 The majority asserts that this restriction of cross-examination was not an abuse of discretion for two reasons. First, the details of a crime are generally "at best only marginally relevant in evaluating a witness' credibility." Disposition at 3. Second, no harm resulted because "the jury had adequate information on which to evaluate the credibility of the witness." Id. Both reasons are unpersuasive in the context of the trial of this case.
 
 
 15
 It is true that the details of a prior conviction are usually irrelevant to the evaluation of a witness's credibility. Indeed, if the government had not raised the informant's prior convictions on direct testimony, then the district court ruling would have been unobjectionable. In such a situation, Fed.R.Evid. 609 would have allowed defense counsel to bring up the informant's prior convictions for impeachment purposes, but it would not have allowed counsel to go into the details behind the convictions.
 
 
 16
 But in this case, the government opened the door to searching cross-examination by allowing the informant to embellish on his criminal record in florid detail. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.1992), cert. denied sub. nom., Wilson v. United States, 113 S.Ct. 2348 (1993); United States v. Segall, 833 F.2d 144 (9th Cir.1987); Burgess v. Premier Corp., 727 F.2d 826, 834 (9th Cir.1984). United States v. Bailleaux, 685 F.2d 1105 (9th Cir.1982), is instructive. There, we held that government could cross-examine a defendant in detail about his prior convictions because he had "opened the subject in his direct testimony." See id. at 1110. The facts in the instant case are similar, except that the tables are turned. Here, it was the government that opened the door to detailed defense cross-examination on the informant's past crimes. In sum, I believe the district court abused its discretion in denying defendant an opportunity to challenge on cross-examination the informant's self-serving testimony on direct.
 
 
 17
 The majority holds alternatively that the jury had sufficient information to judge the informant's credibility without benefit of the prohibited cross-examination. I respectfully disagree. Armenta-Lopez's entrapment defense turned on a battle of credibility between the informant and himself. Had cross-examination been successful in showing that the informant lied when he embellished his past, it could have seriously damaged his credibility in the eyes of the jury.
 
 
 18
 The majority's summary reliance on United States v. Guthrie, 931 F.2d 564 (9th Cir.1991), is misplaced. There, the district court barred the defense from cross-examining the government's witness about a murder she supposedly committed. Contrary to the informant in the instant case, however, the witness in Guthrie never mentioned the subject in her direct testimony, much less embroider the surrounding circumstances. Moreover, the district court allowed extensive cross-examination of the witness on various tangential matters affecting her credibility. See id. at 568 (describing how district court permitted detailed cross-examination on the informant's prior distribution of drugs, psychotherapy, relationship with Hells Angels, firearm conviction, child custody battle, drug use, and collection of Nazi literature). In sharp contrast, no such cross-examination was permitted in the instant case, and cross on the subject of the informant's prior criminal acts were limited to "name of the felony and the fact of conviction only." E.R. at 61, 63.
 
 
 19
 The majority offers no record support, and I find none, for its reproach of Armenta-Lopez's attempted cross-examination as "unending excursions into each and every matter touching upon veracity." Disposition at 3 (quoting United States v. Fortes, 619 F.2d 108, 118 (1st Cir.1980)). Because of my firm conviction that the district court abused its discretion in cutting off cross-examination of the informant, I would vacate the conviction and remand for new trial.
 
 II
 
 20
 Armenta-Lopez made an offer of proof regarding ten contacts between himself and the informant from 1988 to 1992. Because the informant became a governmental informant only in August 1991, the district court sua sponte excluded all evidence of contacts between the informant and Armenta-Lopez that occurred prior to August 1991 as irrelevant. The majority characterizes this evidentiary ruling as harmless error.
 
 
 21
 The defense of entrapment turns on both the degree of inducement by the government and the degree of reluctance shown by the defendant. See United States v. Citro, 842 F.2d 1149, 1152 (9th Cir.), cert. denied, 488 U.S. 866 (1988). Armenta-Lopez's contact with the informant before he actually became an informant is obviously irrelevant to the first factor--government inducement. However, evidence of such contact is plainly relevant to the second factor--defendant's reluctance.
 
 
 22
 Nonetheless, the majority writes that this evidentiary ruling, if erroneous, is harmless because more likely than not it did not affect the verdict. It claims that the totality of evidence compels the conclusion that Armenta-Lopez had no valid entrapment defense. In support, the majority makes three points. First, the informant denied that he met Armenta-Lopez before August 1991. But the informant's denial surely does not foreclose the defense from proving that such meetings did in fact occur. Nor does the informant's denial justify characterizing exclusion of all contrary evidence as harmless.
 
 
 23
 Second, the majority claims that the evidence excluded did not address the specific crime for which Armenta-Lopez was indicted and convicted. This, while true, misses the point. Although the previous contacts may have had nothing to do with this particular drug transaction, Armenta-Lopez contends that these contacts were invitations by the informant to engage in other drug transactions, which Armenta-Lopez declined. A pattern of such invitation and rejection over three years time would be probative of defendant's reluctance, which in turn is highly relevant to the defense of entrapment.
 
 
 24
 Third, the majority states that there is considerable evidence that defendant was predisposed to commit the crime. It is true that the evidence proves that Armenta-Lopez committed the crime willingly. But, the majority focuses on the defendant's deliberative state of mind at too late a point in time. The defendant's mens rea, while he is physically carrying out the criminal act, is not particularly relevant to the defense of entrapment. What is critical is an earlier state of mind when the entrapment supposedly took place, when the defendant first decided to accept the government's solicitation to commit the crime. And the majority fails to specify what evidence proves Armenta-Lopez's predisposition so overwhelmingly that excluding evidence directly to the contrary would be harmless.
 
 III
 
 25
 In addition to a standard entrapment instruction, see Appellant's Opening Brief at 24 n. 4, the district court added: "An individual cannot claim he was entrapped simply because he was poor and could not resist the chance to make money." R.T. of May 29, 1992, at 148. Armenta-Lopez claims that this instruction misstates the law, and is argumentative and derogatory. The majority states that this instruction is correct as a matter of law, and therefore proper.
 
 
 26
 In support of the claim that the instruction is legally correct, the majority cites United States v. Stenberg, 803 F.2d 422 (9th Cir.1986). There, we held that an individual "cannot claim he was entrapped simply because he was poor and could not resist the substantial sums of money to be made." Id. at 432. But this language was quoted directly from an Eighth Circuit opinion, United States v. Dion, 762 F.2d 674, 689 (8th Cir.1985), reversed on other grounds, 476 U.S. 734 (1986), without further analysis. What the majority's opinion omits is that Dion also says, on the very same page: "[h]owever, in some cases, it may be that the unusual poverty of the defendant or other problems peculiar to the defendant must be considered in determining predisposition." Id. at 689 (reversing conviction because of entrapment).
 
 
 27
 A fair reading of Stenberg is that we intended to follow Dion fully, not selectively. Of course, a simple plea to poverty cannot serve as an affirmative defense for criminal conduct. Nonetheless, it denies common sense to think that evidence of a defendant's abject poverty cannot be one variable, among others, that may affect the potency of government inducement, and thereby help the jury gauge the strength of the defendant's resistance.
 
 
 28
 The jury may have construed the supplemental instruction as a command to ignore altogether the defendant's economic status in evaluating the entrapment defense. Without any qualification for extraordinary circumstances, the supplemental jury instruction misstates the holding of the Eight Circuit in Dion, as incorporated into our opinion in Stenberg.
 
 CONCLUSION
 
 29
 None of these errors, evaluated individually, appear to be patently prejudicial. Indeed, if we measured the prejudice of each error in seriatim, we may find each error harmless. But we should not ignore the reality that each error compounds and reinforces the others in the eyes of the jury. See United States v. Wallace, 848 F.2d 1464, 1475-76 (9th Cir.1988) ("Although each of the above errors, looked at separately, may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial to the appellant that reversal is warranted.... In this context, we do not find that a balkanized, issue-by-issue harmless error review would be very enlightening....").
 
 
 30
 I would reverse the conviction and remand for a new trial on the ground that the district court abused its discretion in barring cross-examination about the informant's prior criminal background, in barring defense evidence about contacts between Armenta-Lopez and the informant prior to August 1991, and in giving a misleading entrapment instruction. I do not believe the prejudicial effect of these three errors can be discounted as "harmless."
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Armenta-Lopez raised a fourth argument in his brief but conceded the issue at oral argument. At trial, Armenta-Lopez testified that he never possessed firearms. In response to that testimony, the government introduced evidence of an AK-47 assault rifle that was seized from under Armenta-Lopez's bed. Armenta-Lopez argued that the evidence was seized illegally and that therefore its admission at trial violated his Fourth Amendment rights. It is well-settled, however, that illegally seized evidence can be introduced to impeach the direct testimony of the defendant. See, e.g., United States v. Leon, 468 U.S. 897, 910 (1984). Therefore, even if the evidence was seized illegally, no error was committed by admitting it for the purpose of impeaching Armenta-Lopez's testimony
 
 
 [2]
 Though the cases cited by the dissent, Dissent at 3, establish that a court may admit evidence about prior criminal records when the witness has "opened the door" on direct, none provides any authority for finding an abuse of discretion for the failure to admit such evidence. The existence of discretion to admit evidence is not proof of abuse of discretion for failure to do the same. Were it otherwise, there would be no discretion at all
 
 
 [3]
 The dissent similarly argues that the proffered evidence should have been admitted because it is probative of the defendant's "reluctance." Dissent at 5-7. We disagree with the dissent's characterization of the law of entrapment. "Reluctance" is of interest only when coupled with "inducement"--both are simply variables in an equation for determining predisposition. "[T]he most important factor, as revealed by Supreme Court and other decisions, is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducement." United States v. Reynoso-Ulloa, 548 F.2d 1329, 1336 (9th Cir.1977) (emphasis added), cert. denied, 436 U.S. 926 (1978)