74 F.3d 1246
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benjamin CURLEY, Defendant-Appellant.
 No. 94-10390.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1995.
Decided Jan. 17, 1996.
 
 Before: HALL, WIGGINS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Benjamin Curley appeals his jury convictions for committing crimes on an Indian reservation: aggravated sexual assault, in violation of 18 U.S.C. Secs. 1153 and 2241(a); sexual abuse of a minor, in violation of 8 U.S.C. Sec. 1153; and abusive sexual conduct, in violation of 18 U.S.C. Secs. 1153 and 2244(a)(1). On appeal, Curley contends that the district court erred by (1) admitting evidence of similar acts; (2) precluding disclosure of the identity of a confidential informant; and (3) admitting a witness' prior statement. Curley also argues that the evidence presented at trial was insufficient to support his convictions and that prosecutorial misconduct denied him a fair trial. We have jurisdiction under 28 U.S.C. Sec. 1291. Because none of Curley's arguments have merit, we affirm his convictions.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 From 1984-90, Curley was employed as a dormitory aide at the Teec Nos Pos (TNPBS) boarding school for Navajo Tribe children. On October 16, 1989, a confidential informant (CI) contacted FBI Agent Stanley Burke. The CI claimed that students at TNPBS were being sexually abused by a dormitory aide. Following an investigation, Curley was indicted by a grand jury for sexually abusing eight students at TNPBS between March and October 1989.
 
 
 4
 Curley was tried in April 1994. During trial, the government was allowed to present "similar acts evidence": (1) incidents of Curley improperly touching other students at TNPBS and (2) other incidents of Curley touching the eight students named in the indictment. FBI Agent Burke was called as a Government witness at trial. He testified concerning his contacts with the CI. On cross-examination, Curley's attorney asked the identity of the CI, but the trial court sustained the government's objection to this question. The court permitted cross-examination on "what the informant knew and how the informant knew it, and whether or not this was a person who had been victimized."
 
 
 5
 On cross-examination of one of the victims, Curley questioned the victim concerning a written statement the victim had made in 1992. The purpose of Curley's questions was to impeach the victim's credibility. On redirect the Government introduced this statement into evidence over Curley's objection. After trial, Curley was convicted on four counts and sentenced to 168 months imprisonment.
 
 DISCUSSION
 1. Similar Acts Evidence
 
 6
 Curley argues that evidence of similar acts was improperly admitted, because it merely showed his propensity to touch children and nothing more. Curley claims the government introduced this character evidence "for the sole purpose of suggesting to the jury that the defendant was a 'weird' person and a child molester." We review a district court's decision to admit evidence of similar acts under Fed.R.Evid. 404(b) for abuse of discretion. United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993).
 
 
 7
 The government argues that the evidence was probative:
 
 
 8
 Curley's multifaceted theory of defense, expressed from pre-trial motions through closing argument, placed more in issue than merely his intent. His defense theory included: general denial of any sexual acts or contacts with any students, requiring the government to prove intent, identity and Curley's opportunity to commit the crimes; if he touched the students in the genitalia or other prohibited areas, it was "innocent and required touchings," or acts of discipline, placing in issue his motive, intent and absence of mistake or accident in touchings; he had no intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person, placing in issue motive, intent, and absence of mistake or accidental touching; witness descriptions of sex crimes committed in semi-private areas of dormitory rooms without doors, in hallways, and at roadsides were inherently unbelievable as opportunities to commit such crimes; and he may have been present, or was not present when some acts occurred. In his opening statement Curley denied participation, claimed that he was a strict disciplinarian, and therefore the boys saw him as a "bogeyman" and told "witch" and "ghost" stories about him.
 
 
 9
 Under our four-part test[1] for the application of Rule 404(b), we find the disputed evidence admissible. The similar acts evidence tends to prove material points placed at issue by Curley. The other acts occurred on or about the same time as the acts described in the indictment. The evidence presented was sufficient to support a finding that Curley committed the other acts and those acts were similar to the offense. The district court did not abuse its discretion in admitting the evidence of similar acts.
 
 2. Identity of Confidential Informant
 
 10
 Curley asserts the district court erred when it sustained the Government's objection to his asking the identity of the CI. We review this decision for abuse of discretion. United States v. Gonzalo-Beltran, 915 F.2d 487 (9th Cir.1990). In reviewing the district court's decision, we must balance the public interest in protecting the flow of information against the defendant's right to prepare a defense. United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990).
 
 
 11
 In United States v. Williams, 898 F.2d 1400 (9th Cir.1990), we distinguished between a CI who triggers an investigation and one whose testimony is central to the government's charges. In the latter instance, the CI's identity is more likely relevant or essential to a fair determination of a case. Id. at 1402 (quoting Rovario v. United States, 353 U.S. 53, 60-61 (1957)). In this instance, the CI did no more than contact the authorities, identify four possible victims, and aid the authorities in locating the victims. The CI did not witness any of the charged conduct, nor was the CI's knowledge of the abuse specific. The district court allowed Curley to inquire as to what the informant knew and how he or she came to know it. The district court did not abuse its discretion in precluding disclosure of the identity of the CI.
 
 3. Admission of Prior Statement
 
 12
 Curley argues the district court erred in admitting a victim's prior statement on redirect examination after Curley questioned the victim about the statement on cross-examination. We review the trial court's admission of prior statements for abuse of discretion. United States v. Payne, 944 F.2d 1458, 1470 (9th Cir.1991), cert. denied, 503 U.S. (1992).
 
 
 13
 If the victim's statement is treated as a "prior consistent statement," it must meet the requirements of Fed.R.Evid. 801(d)(1)(B). United States v. Miller, 874 F.2d 1255, 1273 (9th Cir.1989). Statements are admissible under Fed.R.Evid. 801(d)(1)(B) to rebut a charge of recent fabrication only if the statement was made before the existence of the motive to fabricate. Tome v. United States, 115 S.Ct. 696, 705 (1995). In this instance, if the victim had a motive to lie, it arose when Curley was working at the boarding school, long before the victim's statement was made on February 10, 1992. Thus, the victim's statement is inadmissible under Tome.
 
 
 14
 However, Curley's attorney opened the door to admission of the statement by cross-examining the victim about it. The first time mention is made of the statement is during cross-examination:
 
 CROSS-EXAMINATION
 
 15
 DEFENSE ATTORNEY: When you met with Agents Seymour and Burke, did you tell them that you tried to get away from Mr. Curley?
 
 
 16
 Would you like to see a copy of the report [the February 10, 1992 statement later marked as Exhibit 11]?
 
 
 17
 VICTIM: Yes.
 
 
 18
 DEFENSE ATTORNEY: The reference would be on page 3, toward the bottom.
 
 
 19
 THE COURT: Now ask a question.
 
 
 20
 DEFENSE ATTORNEY: As a--is did you tell Agent Seymour that you struggled to get away four times from Mr. Curley?
 
 
 21
 VICTIM: No.
 
 
 22
 DEFENSE ATTORNEY: As a matter of fact, the first time you said that you struggled to get away four times was with Agent Kirk in--on October 22, 1993; is that true?
 
 
 23
 VICTIM: Yes.
 
 
 24
 ....
 
 REDIRECT EXAMINATION
 
 25
 PROSECUTING ATTORNEY: [Name omitted] will you look at that yellow piece of paper [Exhibit 11] in front of you please?
 
 
 26
 You have been asked if that was something you wrote. Did you in fact write that?
 
 
 27
 VICTIM: Yes.
 
 
 28
 PROSECUTING ATTORNEY: Would you look at the first sentence and tell me if when you wrote that, you told about the defendant throwing you on the--the bed?
 
 
 29
 DEFENSE ATTORNEY: I believe the question was four times.
 
 
 30
 THE COURT: Well, it's his question. Overruled. Answer if you can.
 
 
 31
 PROSECUTING ATTORNEY: When you wrote that statement, did you tell in there that Mr. Curley threw you on the bed?
 
 
 32
 VICTIM: Yes.
 
 
 33
 PROSECUTING ATTORNEY: Was that statement true to the best of your memory when you wrote it?
 
 
 34
 DEFENSE ATTORNEY: Objection.
 
 
 35
 THE COURT: Sustained. The statement's not in evidence, Counsel.
 
 
 36
 PROSECUTING ATTORNEY: My next motion is to admit it into evidence, have it marked as an exhibit and moved into evidence.
 
 
 37
 DEFENSE ATTORNEY: Objection. Could we have a sidebar?
 
 
 38
 THE COURT: Yes. May I see it please?
 
 
 39
 (Bench conference on the record as follows:)
 
 
 40
 THE COURT: It's not even marked.
 
 
 41
 PROSECUTING ATTORNEY: I understand that, Your honor. I didn't mark it or put it up there. He had it put up to him. I would ask that it be marked.
 
 
 42
 ....
 
 
 43
 THE COURT: It's marked as Exhibit 11. Any objection?
 
 
 44
 DEFENSE ATTORNEY: I would oppose it, Judge. It is hearsay and it's prejudicial.
 
 
 45
 ....
 
 
 46
 PROSECUTING ATTORNEY: Your honor, I submit that it's not hearsay. Secondly, it is a prior consistent statement offered to rebut the implication of a recent fabrication or modification, which is he is--he had brought out on cross-examination that when he talked to Seymour, he did not describe throwing him on the bed four times, he did not describe him being thrown on the bed.
 
 
 47
 Then he asked is the first time you said he was thrown on the bed four times was in October of this last year. When in fact that shows right at the beginning that he had told two years ago that he was thrown on the bed.
 
 
 48
 That is misleading to the jury to suggest that he never told anybody that he was thrown, or thrown four times until five or six months ago.
 
 
 49
 ....
 
 
 50
 THE COURT: Well, this is a statement written by this witness and in his own hand. He's already been examined on the document. [Exhibit 11] is admitted.
 
 
 51
 The defense's questions implied that the February 10, 1992 statement contained no mention of the victim's attempts to get away. The government sought admission of the statement to show that this was not true. The situation here is similar to that in United States v. Bailleaux, 685 F.2d 1105 (1982). In Bailleaux, the defendant, in his direct testimony, mentioned his prior convictions. The district court then allowed the Government to offer evidence of the prior convictions. The defendant argued that the court had abused its discretion in allowing such evidence.
 
 
 52
 On appeal, the Ninth Circuit first outlined a test for admission of evidence of prior criminal conduct under Fed.R.Evid. 404(b). Id. at 1110. Then the court stated:
 
 
 53
 However, we need not determine whether the four part test was met with respect to that evidence nor whether the appellant was unfairly prejudiced by its admission. It was appellant himself who first offered the evidence of the prior conviction while testifying on direct examination. If any prejudice resulted from the admission of his conviction, it is directly attributable to appellant. Moreover, having opened the subject in his direct testimony, appellant may not object to the Government's subsequent inquiries into the relevant aspects of his prior conviction. The Government contends that it was necessary to cross-examine appellant regarding the conviction to negate the inference that appellant confessed to the Oregon crimes because he was guilty, but denied the San Diego crimes because he was innocent. We agree that the Government's inquiry into appellant's prior conviction on cross-examination was proper. Id.
 
 
 54
 Here the Government sought to admit the victim's statement into evidence only after Curley examined the victim about the same statement. The Government felt it necessary to offer the statement to negate the inference that the victim had not mentioned his attempts to get away. Because Curley "opened the door," under Bailleaux, the statement was properly admitted. This is not an instance where the defendant opened the door to prior consistent statements by asking about prior inconsistent statements. He opened the door to evidence contained in this specific piece of paper (Exhibit 11) by asking about the piece of paper in the presence of the jury and suggesting by his questions that it did not contain a reference to trying to get away.
 
 4. Sufficiency of the Evidence
 
 55
 Curley also challenges his convictions on the ground that the evidence was not sufficient to support the guilty verdicts. However, Curley's arguments go to the credibility of the witnesses or potential conflict of evidence rather than to any lack of evidence upon which to convict Curley. Reviewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Lennick, 18 F.3d 814, 819 (9th Cir.) (citing United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))), cert. denied, 115 S.Ct. 162 (1994).
 
 5. Alleged Prosecutorial Misconduct
 
 56
 Curley also argues that his convictions should be reversed because of prosecutorial misconduct during pretrial motions, inquiry into the appellant's language skills, introduction of irrelevant or prejudicial evidence, and remarks during closing argument. Curley objected at trial to the alleged misconduct, so we review for harmless error. United States v. Hinton, 31 F.3d 817, 825 (9th Cir.1994) (citing United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986)). "Reversal is warranted only if it is more probable than not that the [prosecutorial] misconduct materially affected the verdict." United States v. Christophe, 833 F.2d 1296, 1303 (9th Cir.1987). The prosecutor's actions which Curley asserts constitute prosecutorial misconduct did not materially affect the verdict. Hence, reversal of his convictions is not warranted.
 
 
 57
 Curley's convictions are AFFIRMED.
 
 
 58
 CYNTHIA HOLCOMB HALL, Circuit Judge, concurring:
 
 
 59
 I write separately to express my disagreement with the majority's use of the "open door" doctrine expressed in United States v. Bailleaux, 685 F.2d 1105 (9th Cir.1982), to excuse the government from its obligation to follow the Federal Rules of Evidence in admitting the victim's prior consistent statement on redirect.
 
 
 60
 By using Bailleaux, a case addressing the proper scope of examination, to dispense with the need to comply with Rule 803(d)(1)(B), the majority in effect announces that once a litigant brings up a subject during trial, he forevermore waives any evidentiary objections to the admission of evidence relating to that subject. This is a dangerous doctrine and one I doubt the drafters of the Federal Rules of Evidence intended. See United States v. Wales, 977 F.2d 1323, 1328 (9th Cir.1992) (Kozinski, J., concurring) ("This 'opening the door' doctrine has a certain common sense appeal; but where is it to be found in the Rules of Evidence?"). While I am not unmindful that cases in this Circuit have applied the "open door" doctrine to prior consistent statements, see United States v. Lujan, 936 F.2d 406 (9th Cir.1991) and United States v. Rinn, 586 F.2d 113, 119-20 (9th Cir.1978), cert. denied, 441 U.S. 931 (1979), I find that the majority's holding in this case illustrates the mischief this doctrine can create and thus presents a powerful argument for why these cases should be abandoned.
 
 
 61
 Because I believe that the erroneous admission of the victim's prior consistent statements was harmless, however, see Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991), I agree with the result reached by the majority.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 [E]vidence of prior or subsequent criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged
 United States v. Luna, 21 F.3d 874, 878 (9th Cir.1994) (citation and footnote omitted).